(Slip Opinion) OCTOBER TERM, 2020 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BORDEN *v*. UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 19–5410. Argued November 3, 2020—Decided June 10, 2021

The Armed Career Criminal Act (ACCA) mandates a 15-year minimum sentence for persons found guilty of illegally possessing a firearm who have three or more prior convictions for a "violent felony." An offense qualifies as a violent felony under ACCA's elements clause if it necessarily involves "the use, attempted use, or threatened use of physical force against the person of another." 18 U. S. C. §924(e)(2)(B)(i). In *Leocal* v. *Ashcroft*, 543 U. S. 1, the Court held that offenses requiring only a negligent *mens rea* fall outside a relevantly identical definition. *Id.,* at 9. The "critical aspect" in determining the relevant *mens rea*, the Court explained, was the statute's demand that the perpetrator use physical force "*against the person or property of another*." *Ibid* (emphasis in original). Then in *Voisine* v. *United States*, 579 U. S. 686, the Court held that reckless crimes fall within a different statutory definition—this one requiring the "use of physical force," but lacking the "against" phrase *Leocal* deemed "critical." In both decisions, the Court left open whether reckless offenses would satisfy ACCA's elements clause.

Petitioner Charles Borden, Jr., pleaded guilty to a felon-in-possession charge, and the Government sought an enhanced sentence under ACCA. One of the three convictions alleged as predicates was for reckless aggravated assault in violation of Tennessee law. Borden argued that this offense is not a violent felony under ACCA's elements clause because a mental state of recklessness suffices for conviction. In his view, only purposeful or knowing conduct satisfies the clause's demand for the use of force "against the person of another." The District Court disagreed and sentenced Borden as a career offender. The Sixth Circuit affirmed.

*Held*: The judgment is reversed, and the case is remanded.

769 Fed. Appx. 266, reversed and remanded.

JUSTICE KAGAN, joined by JUSTICE BREYER, JUSTICE SOTOMAYOR, and JUSTICE GORSUCH, concluded that a criminal offense with a *mens rea* of recklessness does not qualify as a "violent felony" under ACCA's elements clause. Pp. 4–23.

(a) That conclusion follows from the statutory text. The phrase "against another," when modifying a volitional action like the "use of force," demands that the perpetrator direct his force at another individual. Reckless conduct is not aimed in that prescribed manner. *Leocal* confirms that conclusion. When read against the words "use of force," the Court explained, the "against" phrase—the definition's "critical aspect"—"suggests a higher degree of intent" than (at least) negligence. 543 U. S., at 9. That understanding of "against" contradicts the Government's view that the phrase here does not incorporate a *mens rea* requirement. Pp. 8–15.

(b) The ordinary meaning of the term "violent felony"—which the elements clause defines—also informs this construction. As *Leocal* explained, "we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'" 543 U. S., at 11. The Court said the same in *Johnson* v. *United States*, 559 U. S. 133, when construing language in ACCA's definition of "violent felony." *Id.,* at 139–140. With that focus in place, both decisions construed the definitions at issue to mark out a narrow "category of violent, active crimes." *Id.,* at 140; 543 U. S., at 11. And those crimes are best understood to involve a purposeful or knowing mental state—a deliberate choice of wreaking harm on another, rather than mere indifference to risk. P. 16.

(c) Classifying reckless crimes as "violent felonies" would also conflict with ACCA's purpose. Congress enacted ACCA to address "the special danger created when a particular type of offender—a violent criminal[ ]—possesses a gun." *Begay* v. *United States*, 553 U. S. 137, 146. An offender who has repeatedly committed "purposeful, violent, and aggressive" crimes poses an uncommon danger of "us[ing a] gun deliberately to harm a victim." *Id.,* at 145. But that is not so of someone convicted of a crime, like a DUI offense, revealing only a "degree of callousness toward risk." *Id.*, at 146. However blameworthy, the reckless (or negligent) conduct involved in such a crime is "far removed" from the "deliberate kind of behavior associated with violent criminal use of firearms." *Id.*, at 147. The Government's contrary view would label as ACCA predicates a range of common offenses—like reckless driving—that Congress did not mark "for heightened punishment." 543 U. S., at 11. Pp. 17–20.

(d) The Government's main response is this Court's decision in

*Voisine*, which interpreted the phrase "use of force" in defining a "misdemeanor crime of domestic violence" to cover reckless conduct. But that argument ignores the textual difference between the two statutes—the "against" clause. That phrase, as *Leocal* recognized, is not window dressing: It is the "critical" text for deciding the level of *mens rea* needed. 543 U. S., at 9. And as the Court has explained, "against the person of another," when modifying the "use of physical force," introduces that action's conscious object. So too, the Government's argument disregards how the context and purpose of the statute in *Voisine* diverge from those of ACCA's elements clause. The provision in *Voisine* defines not a "violent felony" but a "misdemeanor crime of domestic violence." It focuses on those convicted not of serious felony offenses, but instead of "garden-variety assault or battery misdemeanors." 579 U. S., at ___ (slip op., at 8). And it captures not "violent, active" conduct alone, but also "acts that one might not characterize as 'violent' in a nondomestic context." *United States* v. *Castleman*, 572 U. S. 157, 165. Given those surrounding differences in coverage, it makes sense that the domestic violence provision would include reckless behavior when ACCA's elements clause does not. Pp. 20–23.

JUSTICE THOMAS concluded that ACCA's elements clause does not encompass Borden's conviction for reckless aggravated assault for the reasons stated in his dissenting opinion in *Voisine*, 579 U. S., at ___ (slip op., at 2). A crime that can be committed through mere recklessness does not have as an element the "use of physical force" because that phrase "has a well-understood meaning applying only to intentional acts designed to cause harm." *Id.,* at ___ (slip op., at 2, 16). Borden's reckless offense would fall within ACCA's residual clause had that provision not been declared unconstitutional in *Johnson* v. *United States*, 576 U. S. 591. Though *Johnson* was wrongly decided, it must be accepted in this case because to do otherwise would create further confusion and division about whether state laws prohibiting reckless assault satisfy the elements clause. Pp. 1–5.

KAGAN, J., announced the judgment of the Court and delivered an opinion in which BREYER, SOTOMAYOR, and GORSUCH, JJ., joined. THOMAS, J., filed an opinion concurring in the judgment. KAVANAUGH, J., filed a dissenting opinion, in which ROBERTS, C. J., ALITO, and BARRETT, JJ., joined.

1

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 19–5410

## CHARLES BORDEN, JR., PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 10, 2021]

JUSTICE KAGAN announced the judgment of the Court and delivered an opinion, in which JUSTICE BREYER, JUSTICE SOTOMAYOR, and JUSTICE GORSUCH join.

The Armed Career Criminal Act (ACCA), 18 U. S. C. §924(e), mandates a 15-year minimum sentence for persons found guilty of illegally possessing a gun who have three or more prior convictions for a "violent felony." The question here is whether a criminal offense can count as a "violent felony" if it requires only a *mens rea* of recklessness—a less culpable mental state than purpose or knowledge. We hold that a reckless offense cannot so qualify.

I

Congress enacted ACCA, as its full name makes clear, to address the "special danger" associated with "armed career criminals." *Begay* v. *United States*, 553 U. S. 137, 146 (2008). A "small percentage of repeat offenders," Congress found, commit a "large percentage" of all violent crimes. *Taylor* v. *United* States, 495 U. S. 575, 581 (1990) (quoting H. R. Rep. No. 98–1073, p. 1 (1984)). And when such a habitual violent offender carries a gun, he poses a serious risk of wreaking harm. As his prior convictions reveal, he is "the

kind of person who," when armed, "might deliberately point the gun and pull the trigger." *Begay*, 553 U. S., at 146.

To allay that danger, ACCA enhances the sentence of anyone convicted under 18 U. S. C. §922(g) of being a felon in possession of a firearm if he has three or more prior convictions (whether state or federal) for a "violent felony." The increase in penalty is severe: A 10-year maximum sentence turns into a 15-year minimum one. See §924(a)(2), (e)(1). And because that is so, the scope of the statute is closely confined. See *Begay*, 553 U. S., at 146 (Congress did not provide for "a 15-year mandatory prison term where th[e] increased likelihood [of gun violence] does not exist"). The penalty enhancement kicks in only when a defendant has committed no fewer than three offenses meeting the statute's definition of "violent felony." That definition, in addition to ticking off several specific crimes (for example, burglary and arson), includes the so-called elements clause, relevant here. An offense qualifies as a violent felony under that clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." §924(e)(2)(B)(i).

To decide whether an offense satisfies the elements clause, courts use the categorical approach. See *Stokeling* v. *United States*, 586 U. S. ___, ___ (2019) (slip op., at 13). Under that by-now-familiar method, applicable in several statutory contexts, the facts of a given case are irrelevant. The focus is instead on whether the elements of the statute of conviction meet the federal standard. Here, that means asking whether a state offense necessarily involves the defendant's "use, attempted use, or threatened use of physical force against the person of another." §924(e)(2)(B)(i); see *Shular* v. *United States*, 589 U. S. ___, ___–___ (2020) (slip op., at 3–4). If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal stand-

ard, and so cannot serve as an ACCA predicate. See *Johnson* v. *United States*, 559 U. S. 133, 137 (2010).

In this case, petitioner Charles Borden, Jr., pleaded guilty to a felon-in-possession charge, and the Government sought an enhanced sentence under ACCA. One of the three convictions alleged as predicates was for reckless aggravated assault in violation of Tennessee law. The relevant statute defines that crime as "[r]ecklessly commit[ting] an assault" and either "caus[ing] serious bodily injury to another" or "us[ing] or display[ing] a deadly weapon." Tenn. Code Ann. §39–13–102(a)(2) (2003); see §39–13–101(a)(1). Borden argued that this offense is not a violent felony under ACCA's elements clause because a mental state of recklessness suffices for conviction. In his view, only purposeful or knowing conduct satisfies the clause's demand for the use of force "against the person of another." The District Court disagreed, holding that reckless offenses qualify as violent felonies and sentencing Borden as a career offender. The Court of Appeals for the Sixth Circuit affirmed that decision based on circuit precedent—though noting that Borden was "not alone" in viewing the precedent as "wrongly decided." 769 Fed. Appx. 266, 268 (2019) (citing *United States* v. *Verwiebe*, 874 F. 3d 258 (CA6 2017)).

The circuit courts have indeed differed in addressing the question Borden raises. Some have held, as in this case, that a statute covering reckless conduct qualifies as a violent felony under ACCA.[1] Others have concluded that only a statute confined to purposeful or knowing conduct can count as such a felony.[2] The dispute turns on the definition

_____

[1] See *United States* v. *Burris*, 920 F. 3d 942, 951 (CA5 2019); *United States* v. *Haight*, 892 F. 3d 1271, 1281 (CADC 2018); *United States* v. *Pam*, 867 F. 3d 1191, 1207–1208 (CA10 2017); *United States* v. *Fogg*, 836 F. 3d 951, 956 (CA8 2016).

[2] See *United States* v. *Begay*, 934 F. 3d 1033, 1039 (CA9 2019); *United States* v. *Moss*, 920 F. 3d 752, 756 (CA11 2019), vacated pending reh'g en

of "violent felony" in ACCA's elements clause—more specifically, on how different mental states map onto the clause's demand that an offense entail the "use . . . of physical force against the person of another." §924(e)(2)(B)(i). We granted certiorari to resolve the issue. 589 U. S. \_\_\_ (2020).

## II

Two pieces of background should ease the way. We begin by setting out four states of mind, as described in modern statutes and cases, that may give rise to criminal liability. Those mental states are, in descending order of culpability: purpose, knowledge, recklessness, and negligence. We then discuss two prior decisions of this Court addressing questions similar to the one here. In each, the Court considered how a certain mental state relates to a statutory definition marking out a category of crimes. One of those definitions is almost identical to the elements clause; the other appropriates only the clause's first half. The Court's analyses—about both the statute more like and the statute less like the elements clause—help frame today's decision.

Purpose and knowledge are the most culpable levels in the criminal law's mental-state "hierarchy." *United States* v. *Bailey*, 444 U. S. 394, 404 (1980). A person acts purposefully when he "consciously desires" a particular result. *Ibid.* (internal quotation marks omitted); see ALI, Model Penal Code §2.02(2)(a) (1985). He acts knowingly when "he is aware that [a] result is practically certain to follow from his conduct," whatever his affirmative desire. *Bailey*, 444 U. S., at 404 (internal quotation marks omitted); see Model Penal Code §2.02(2)(b)(ii). We have characterized the distinction between the two as "limited," explaining that it "has not been considered important" for many crimes. *Bailey*, 444 U. S., at 404 (internal quotation marks omitted); see Model Penal Code, Comment 2, pp. 233–234 (calling the

————————

banc.

distinction "narrow" and often "inconsequential"). A person who injures another knowingly, even though not affirmatively wanting the result, still makes a deliberate choice with full awareness of consequent harm. See *Bailey*, 444 U. S., at 403–404.[3]

Recklessness and negligence are less culpable mental states because they instead involve insufficient concern with a risk of injury. A person acts recklessly, in the most common formulation, when he "consciously disregards a substantial and unjustifiable risk" attached to his conduct, in "gross deviation" from accepted standards. Model Penal Code §2.02(2)(c); see *Voisine* v. *United States*, 579 U. S. 686, \_\_\_ (2016) (slip op., at 4). That risk need not come anywhere close to a likelihood. Speeding through a crowded area may count as reckless even though the motorist's "chances of hitting anyone are far less [than] 50%." 1 W. LaFave, Substantive Criminal Law §5.4(f) (2018) (citing cases involving low-probability events). Similarly (though one more step down the mental-state hierarchy), a person acts negligently if he is not but "should be aware" of such a "substantial and unjustifiable risk," again in "gross deviation" from the norm. Model Penal Code §2.02(2)(d). There, the fault lies in the person's simple "failure to perceive" the possible consequence of his behavior. *Ibid.*

In *Leocal* v. *Ashcroft*, 543 U. S. 1 (2004), this Court held that offenses requiring only a negligent *mens rea* fall outside a statutory definition relevantly identical to ACCA's

————————
[3] The difference between purpose and knowledge matters for certain "classes of crimes," where "heightened culpability has been thought to merit special attention." *United States* v. *Bailey*, 444 U. S. 394, 405 (1980). The most typical examples are inchoate crimes (conspiracy or attempts) and accessory liability (aiding and abetting). There, a purposeful mental state may help separate criminal conduct from innocent behavior. See *ibid.*; *United States* v. *Falcone*, 109 F. 2d 579, 581 (CA2 1940) (L. Hand, J.); Model Penal Code, Comment 2, p. 234. We have no occasion to address those offenses, nor the relationship more generally between purpose and knowledge.

elements clause. That definition, codified at 18 U. S. C. §16(a), is for the term "crime of violence," which appears in many federal criminal and immigration laws. Section 16(a) states, in language that should by now sound familiar, that a "crime of violence" means "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." (In case you missed it, the sole difference between §16(a) and the elements clause is the phrase "or property," which brings property crimes within the former statute's ambit.) The question presented was whether that definition covers DUI offenses—for driving under the influence of alcohol and causing serious bodily injury—that require only a negligent mental state. In addressing that issue, the parties had debated whether "the word 'use' alone supplies a *mens rea* element." 543 U. S., at 9. But the Court thought the focus on that one word "too narrow." *Ibid.* Rather, we said, the "critical aspect" of §16(a) is its demand that the perpetrator use physical force "*against the person or property of another.*" *Ibid.* (emphasis in original). As a matter of "ordinary or natural meaning," we explained, that "key phrase . . . most naturally suggests a higher degree of intent than negligent" conduct. *Ibid.* (internal quotation marks omitted). And confirmation of that view came from the defined term itself. The phrase "crime of violence," we reasoned, "suggests a category of violent, active crimes that cannot be said naturally to include" negligent offenses. *Id.*, at 11. All that sufficed to resolve the status of the DUI offense at issue. The Court thus reserved the question whether an offense with a *mens rea* of recklessness likewise fails to qualify as a crime of violence. *Id.*, at 13.

More recently, the Court held that reckless offenses fall within a different statutory definition—this one lacking the "against another" phrase *Leocal* deemed "critical." *Id.*, at 9. The law at issue in *Voisine* v. *United States* bars persons convicted of a "misdemeanor crime of domestic violence"

from possessing firearms. 18 U. S. C. §922(g)(9). That phrase is defined to mean a misdemeanor, committed by a person in a specified domestic relationship with the victim, that "has, as an element, the use or attempted use of physical force." §921(a)(33)(A). In that truncated definition, the only language anyone could "think[] relevant" was the word "use" (the word *Leocal*, in construing a longer definition, deemed not the right focus). *Voisine*, 579 U. S., at \_\_\_ (slip op., at 5). The Court understood "use" as demanding volition—the "active employment" of force. *Id.*, at \_\_\_–\_\_\_ (slip op., at 5–6). But we thought that lone word "indifferent" to whether an actor choosing to employ force had a mental state of recklessness, knowledge, or purpose. *Id.*, at \_\_\_ (slip op., at 6). And that reading of "use," we continued, is the only one consistent with the statute's history and purpose. Congress enacted §922(g)(9), we explained, to prevent domestic abusers convicted of "garden-variety [misdemeanor] assault" from owning guns—and most such misdemeanors cover reckless conduct. *Id.*, at \_\_\_ (slip op., at 8). At each step of the analysis, then, our decision was statute-specific. We made clear that other statutory definitions—whether the one in *Leocal* or the near-identical one in ACCA's elements clause—might exclude reckless offenses. See *id.*, at \_\_\_, n. 4 (slip op., at 7, n. 4).

## III

Today, we reach the question we reserved in both *Leocal* and *Voisine*. We must decide whether the elements clause's definition of "violent felony"—an offense requiring the "use of physical force against the person of another"—includes offenses criminalizing reckless conduct.[4] We hold that it does not. The phrase "against another," when modifying

_____

[4] Some States recognize mental states (often called "depraved heart" or "extreme recklessness") between recklessness and knowledge. We have no occasion to address whether offenses with those mental states fall within the elements clause.

the "use of force," demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner. Our reading of the relevant text finds support in its context and purpose. The treatment of reckless offenses as "violent felonies" would impose large sentencing enhancements on individuals (for example, reckless drivers) far afield from the "armed career criminals" ACCA addresses—the kind of offenders who, when armed, could well "use [the] gun deliberately to harm a victim." *Begay*, 553 U. S., at 145. And contra the Government (and dissent), *Voisine* says nothing to the contrary.

## A

### 1

The parties here dispute the meaning of the phrase "use of physical force against the person of another." They start in the same place, as they must: The "use of physical force," as *Voisine* held, means the "volitional" or "active" employment of force. 579 U. S., at \_\_\_–\_\_\_ (slip op., at 5–6). The fight begins with the word "against." According to Borden, that word means "in opposition to," and so "introduces the target of the preceding action." Brief for Petitioner 19 (citing dictionaries). Examples are easy to muster: The general deployed his forces against a rival regiment, or the chess master played the Queen's Gambit against her opponent. The Government responds that "against" instead means "mak[ing] contact with," and so introduces the mere recipient of force rather than its "intended target." Brief for United States 23–24 (also citing dictionaries). As examples, the Government offers: "waves crashing against the shore or a baseball hitting against the outfield fence." *Id.,* at 23 (internal quotation marks omitted). The difference in meaning, both parties agree, matters for this case. Brief for Petitioner 19–21; Brief for United States 23–24. If "against," as used here, expresses a kind of directedness or targeting, then recklessness—as even the Government

concedes—falls outside the elements clause. See *id.*, at 26 (noting that the oppositional definition of "against" would exclude "a defendant who recklessly causes injury"). Only if the "against" phrase lacks that connotation—if, as the Government argues, it is indifferent to whether the conduct is directed at another—can the elements clause include reckless offenses. *Id.*, at 23.

Borden's view of "against," as introducing the conscious object (not the mere recipient) of the force, is the right one given the rest of the elements clause. Dictionaries offer definitions of "against" consistent with both parties' view: The word can mean either "[i]n opposition to" or "in contact with," depending on the context. See, *e.g.*, Webster's New International Dictionary 46 (2d ed. 1957) (giving both definitions). The critical context here is the language that "against another" modifies—the "use of physical force." As just explained, "use of force" denotes volitional conduct. And the pairing of volitional action with the word "against" supports that word's oppositional, or targeted, definition. Look once more at the examples offered in the last paragraph. Borden's involve volitional conduct, by the general or chess master—essentially, each actor's "use of force." There, the "against" phrase reveals at whom the conduct is consciously directed: the rival army or player. In contrast, the Government's examples do not involve volitional conduct, because "waves" and "baseballs" have no volition— and indeed, cannot naturally be said to "use force" at all. There, an "against" clause merely names a thing with which the subject came into contact.[5] For our purpose, the more

—————

[5] In similar manner, the examples that dictionaries give of the "in contact with" meaning of "against" all involve non-volitional conduct. See, *e.g.*, American Heritage Dictionary 23 (1981) (those same big "waves dashing against the shore"); Webster's New International Dictionary, at 46 ("hail beats against the roof"); Webster's Third New International Dictionary 39 (1981) ("the fighter was knocked back against the ropes").

apt examples are Borden's. As in those examples, ACCA's
"against" phrase modifies volitional conduct (*i.e.,* the use of
force). So that phrase, too, refers to the conduct's conscious
object. Indeed, the Court has made a similar point before,
in an opinion by one of its great wordsmiths. When citizens
"bear [a]rms against" some entity, Justice Scalia wrote,
what follows the word "against" is "the target of the hostil-
ities." *District of Columbia* v. *Heller*, 554 U. S. 570, 586
(2008) (internal quotation marks omitted). That is just as
true when someone, as in the elements clause, actively em-
ploys physical force.

On that understanding, the clause covers purposeful and
knowing acts, but excludes reckless conduct (as, once again,
the Government concedes). See Brief for United States 26;
see *supra,* at 8–9. Purposeful conduct is obvious. Suppose
a person drives his car straight at a reviled neighbor, desir-
ing to hit him. The driver has, in the statute's words,
"use[d] . . . physical force against the person of another."
The same holds true for knowing behavior. Say a getaway
driver sees a pedestrian in his path but plows ahead any-
way, knowing the car will run him over. That driver, too,
fits within the statute: Although he would prefer a clear
road, he too drives his car straight at a known victim. Or
said otherwise, both drivers (even though for different rea-
sons) have consciously deployed the full force of an automo-
bile at another person. See *United States* v. *United States
Gypsum*, 438 U. S. 422, 445 (1978) (explaining that the law
thus views both as "intend[ing]" the result). But that is not
so of a reckless (or a negligent) actor. Imagine a commuter
who, late to work, decides to run a red light, and hits a pe-
destrian whom he did not see. The commuter has con-
sciously disregarded a real risk, thus endangering others.

--------

By contrast, when the dictionaries discuss the "in opposition to" mean-
ing, their examples turn volitional. See *id.,* at 39 ("a successful campaign
against the enemy"); American Heritage Dictionary, at 23 (a "struggle
against fate").

And he has ended up making contact with another person, as the Government emphasizes. See Brief for United States 23. But as the Government just as readily acknowledges, the reckless driver has not directed force at another: He has not trained his car at the pedestrian understanding he will run him over. See *id.,* at 26. To the contrary, his fault is to pay insufficient attention to the potential application of force. Because that is so—because his conduct is not opposed to or directed at another—he does not come within the elements clause. He has not used force "against" another person in the targeted way that clause requires.

*Leocal* confirms our conclusion. Although the Court reserved the question we decide today, its reasoning all but precludes the Government's answer. Recall that *Leocal* held that negligent conduct falls outside a statutory definition much like the elements clause—one requiring the use of physical force "against the person or property of another." 18 U. S. C. §16(a); see 543 U. S., at 9; *supra,* at 5–6. In thus excluding crimes with a negligent *mens rea*, the Court reasoned just as we have today. When read against the words "use of force," the "against" phrase—the definition's "critical aspect"—"suggests a higher degree of intent" than (at least) negligence. 543 U. S., at 9. That view of §16(a)'s "against" phrase—as incorporating a *mens rea* requirement—contradicts the Government's (and dissent's) view here that a materially identical phrase is "not a roundabout way" of . . . incorporating a *mens rea* requirement. Brief for United States 9. The Government thus asks us to read ACCA's elements clause—specifically, its "against" phrase, modifying the "use of force"—contrary to how we have read near-identical words before.

Even the single difference between the two statutes works against the Government: On its reading, §16(a)'s two added words would turn that provision's "against" phrase into surplusage. The problem begins with the Govern-

ment's attempt to give ACCA's own "against" phrase meaning. If not to incorporate an intent requirement, what function does that phrase serve? The Government's theory is that the phrase limits the elements clause to crimes involving force against people, as opposed to property. See *id.*, at 23. That would give the clause some work to do in ACCA. But as noted earlier, the statute at issue in *Leocal* does not make that distinction: To repeat, §16(a)'s "against" phrase refers to uses of force "against the person *or property* of another." §16(a) (emphasis added); see *supra,* at 6. In other words, §16(a) lists *both* of the two (and only two) plausible objects of force. So the Government's intent-less reading would leave the "against" phrase in §16(a) without any function; it would render the phrase surplusage. Far from thinking such a thing possible, the *Leocal* Court considered §16(a)'s "against" phrase "key" and "critical"—again, because it (in combination with the "use of force" language) defines the requisite "degree of intent." 543 U. S., at 9. Unlike the Government, we favor a construction consonant with that view. The "against" phrase indeed sets out a *mens rea* requirement—of purposeful or knowing conduct.

2

The dissent offers up two "alternative"—really, mutually inconsistent—counter-arguments about the elements clause's text. In the first, the dissent claims to find a "term of art" in the clause—implicitly admitting that the language, as ordinarily understood, excludes reckless conduct. See *West Virginia Univ. Hospitals, Inc.* v. *Casey*, 499 U. S. 83, 92, n. 5 (1991) (noting that terms of art "*depart* from ordinary meaning"). Here, the dissent is all on its own: Neither the Government nor any of the many courts that have looked at this issue has advanced this term-of-art theory. In the second, the dissent goes more conventional, essentially repeating what the Government says, though with a distinctively question-begging quality. The term-of-art

claim fails because the dissent's proposed term does not appear in—and indeed differs in critical ways from—the elements clause's text. The ordinary-meaning claim fails for reasons already familiar.

The dissent tries to sidestep the parties' dispute over ordinary meaning by depicting the "against" phrase as a "term of art" having "zero to do with *mens rea*." *Post*, at 5, 13 (opinion of KAVANAUGH, J.). In the dissent's words: "[W]e should not disregard the longstanding meaning of a criminal-law term of art—namely, offenses against the person—to smuggle" a *mens rea* requirement into the elements clause. *Post*, at 13. The dissent here relies on the appearance in many state criminal codes of headings and captions using the phrase "Offenses Against the Person." *Post,* at 7; see, *e.g.,* La. Rev. Stat. Ann., Tit. 14, ch. 1, pt. 2 (West 2016) (listing offenses—spanning homicide, negligent DUI, and defamation—under the chapter heading "offenses against the person").

But note how this argument breaks down at its first move: The dissent offers up a "term of art" that is nowhere in the statute the dissent is supposed to be construing. The dissent does not pretend that the statutory phrase "use of physical force against the person of another" is a term of art; there is not, even in the dissent's imagining, any historical or distinctly legal meaning associated with that language. The dissent instead insists on reading into ACCA a term-of-art meaning for a phrase—"offenses against the person"—that makes no appearance there. That is no way to do statutory construction. The first precondition of any term-of-art reading is that the term be present in the disputed statute. Here, it is not. See *Food Marketing Institute* v. *Argus Leader Media*, 588 U. S. ___, ___ (2019) (slip op., at 10) (similarly rejecting an attempt to "rearrang[e]" statutory text to create a "term of art" that "does not appear in the statute").

And indeed, the dissent's extra-statutory term differs in

a critical way from the actual language of the actual elements clause. As discussed above, the "against" phrase in that clause modifies the "use of physical force"—language this Court has held (and the dissent concedes) denotes volitional conduct. It is, as explained above, the pairing of volitional action with the word "against" that produces its oppositional or directed meaning—and excludes recklessness from the statute. See *supra,* at 9–10. Nor is that only our explanation: As noted earlier, *Leocal* said the identical thing about nearly identical statutory language, focusing on the interplay of "use" and "against" to conclude that the language had everything—not "zero"—to do with *mens rea.* See 543 U. S., at 9 (holding that the whole phrase "most naturally suggests a higher degree of intent"); *supra*, at 11. So it is no small thing that the dissent, in its term-of-art machinations, removes the verb phrase "use of physical force" and substitutes the simple noun "offenses." In so doing, it has replaced the very thing that shapes the "against" phrase's meaning. Once again, statutory construction does not work that way: A court does not get to delete inconvenient language and insert convenient language to yield the court's preferred meaning.

Finally, consider where the dissent looks for its supposed "offenses against the person" term of art. Not to any statute defining crimes or setting penalties (as ACCA does). Rather to headings and captions designed to cover a myriad of offenses, from homicide through defamation. They are umbrella terms used for cataloguing crimes—nothing more. That is why the dissent cites no judicial decision construing the term, much less saying anything about what it means for *mens rea.* The term cannot have a traditional or commonplace meaning in statutes specifying criminal conduct: It does not appear in them in the first place.

In a nutshell, the dissent's "term of art" theory goes as follows: Congress took an umbrella term ("offenses against the person") used to organize a broad set of crimes (some

not even conceivably ACCA predicates); plucked out three words ("against the person"); appended them to a statutory phrase ("use of physical force") with which they are not often associated; put the combination into a substantive criminal statute—all to signify, contra *Leocal*, a term of art indifferent to *mens rea*. No wonder the dissent is the first to make the argument. See *supra,* at 12. It fails at every turn.

And so the dissent must proceed to its ordinary-meaning claim, reprising (if at higher volume) the Government's flawed argument about what the "against" phrase is most naturally read to encompass. Here, the dissent insists that because reckless force can make contact with a person— *e.g.*, because a reckless driver can run over a pedestrian— the statute must encompass that conduct. See *post*, at 20– 22. But that just assumes the conclusion: The very question here is whether the statutory language Congress enacted requires that force be directed at, rather than just happen to hit, an object. As to that issue, the dissent asserts that "[s]tate and federal reporters" are "replete with references to individuals recklessly using force against others." *Post*, at 18–19, and n. 15 (quoting, for example, a decision saying that a "jury found that Arton did not intentionally or recklessly use excessive force against Cook"). But once again, the dissent is putting the rabbit in the hat. If Congress had used the word "recklessly" in the elements clause, we would have to interpret that clause to cover reckless offenses, even though the best reading of the clause without that word goes the other way. But Congress did not say "recklessly." And we must construe the elements clause as it is—without first inserting the word that will (presto!) produce the dissent's reading.[6]

––––––––––
[6] The dissent also goes through a complicated counting exercise about how different Justices have divided in this and two other cases, apparently to show how unfair it is that the dissent's view has not prevailed here. See *post,* at 4, n. 3. But there is nothing particularly unusual about today's line-up. Four Justices think that the "use" phrase, as modified

B

Were there any doubt about the elements clause's meaning, context and purpose would remove it.

The elements clause defines a "violent felony," and that term's ordinary meaning informs our construction. *Leocal* well expressed this idea: In interpreting §16(a), "we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'" 543 U. S., at 11. Quoting that statement, *Johnson* v. *United States* said the same thing when construing language (there, the term "physical force") in ACCA's definition of "violent felony." 559 U. S., at 140. "Ultimately, context determines meaning," we wrote, and "[h]ere we are interpreting" a phrase "as used in defining" the term "*violent* felony." *Id.,* at 139–140. With that focus in place, both decisions construed the definitions at issue to mark out a narrow "category of violent, active crimes." *Id.,* at 140; 543 U. S., at 11. And those crimes are best understood to involve not only a substantial degree of force, but also a purposeful or knowing mental state—a deliberate choice of wreaking harm on another, rather than mere indifference to risk. As *Leocal* explained: The term "crime of violence" in §16(a) "cannot be said naturally to include DUI offenses"—typically crimes of recklessness or negligence. *Ibid.* In a case much like this one, then-Judge Alito reiterated the point. He wrote that "[t]he quintessential violent crimes," like murder or rape, "involve the intentional use" of force. *Oyebanji* v. *Gonzales*, 418 F. 3d 260, 264 (CA3 2005). By contrast, drunk driving and other crimes of recklessness, though "moral[ly] culpab[le]," do not fit within "the ordinary meaning of the term 'violent' crime." *Ibid.*

––––––––––

by the "against" phrase, in ACCA's elements clause excludes reckless conduct. One Justice thinks, consistent with his previously stated view, that the "use" phrase alone accomplishes that result. See *post,* at 2 (THOMAS, J., concurring in judgment). And that makes five to answer the question presented. Q: Does the elements clause exclude reckless conduct? A: Yes, it does.

Nor does the classification of reckless crimes as "violent felonies" comport with ACCA's purpose. Congress enacted ACCA, as noted earlier, to address "the special danger created when a particular type of offender—a violent criminal[]—possesses a gun." *Begay*, 553 U. S., at 146; see *supra,* at 1–2. In keeping with that concern, ACCA sets out to identify, for sentencing purposes, the eponymous "armed career criminal"—the sort of offender who, when armed, "might deliberately point the gun and pull the trigger." *Begay*, 553 U. S*.,* at 145–146. The Act discharges that goal by looking to a person's criminal history. An offender who has repeatedly committed "purposeful, violent, and aggressive" crimes, we have explained, poses an uncommon danger of "us[ing a] gun deliberately to harm a victim." *Id.,* at 145. But that is not so—as this Court has recognized—of someone convicted of a crime, like a DUI offense, revealing only a "degree of callousness toward risk." *Id.*, at 146. However blameworthy, the reckless (or negligent) conduct involved in such a crime is "far removed" from the "deliberate kind of behavior associated with violent criminal use of firearms." *Id.*, at 147. So there is no reason, consistent with ACCA's focus on armed career criminals, for reckless offenses to precipitate the statute's enhanced sentences.[7]

---

[7] The dissent would upend our consistent view of Congress's purpose by treating as ACCA predicates not just "purposeful, violent, and aggressive" crimes but the disregard-of-risk offenses we have found "far removed." *Begay*, 553 U. S., at 145, 147. The "line for criminal liability," the dissent argues, is generally drawn at recklessness, and so the Model Penal Code "establishes recklessness as the default minimum *mens rea*." *Post*, at 15, 16. But we have never suggested that the threshold for criminal liability is the threshold for ACCA, or that ACCA is about offenders who meet "minimum" requirements. To the contrary. As just noted, we have insisted on a higher threshold: ACCA predicates are the crimes "typically committed by those whom one normally labels 'armed career criminals'"—whose very possession of a gun poses a "special danger." *Begay*, 553 U. S., at 146.

Consider the kinds of crimes—the too-common stuff of ordinary offenders—that would trigger ACCA's 15-year minimums if we adopted the Government's (or dissent's) position. Many convictions for reckless crimes result from unsafe driving. Under the same Tennessee reckless-assault law applied to Borden, people have been convicted for injuries attributable to running a stop sign or veering onto the sidewalk. See *State* v. *Graham*, 2008 WL 199851, *2–*4 (Tenn. Crim. App., Jan. 24, 2008); *State* v. *Gillon*, 15 S. W. 3d 492, 496–497 (Tenn. Crim. App. 1997). In States with similar statutes requiring only a reckless *mens rea*, many individuals have been convicted for accidents resulting from text messaging or, of course, drunk driving. See, *e.g., State* v. *Belleville*, 166 N. H. 58, 63–64, 88 A. 3d 918, 922 (2014); *State* v. *Reando*, 313 S. W. 3d 734, 740 (Mo. App. 2010). In one case, even a police officer was convicted of a reckless assault for speeding to a crime scene without his siren on and hitting another patrol car. See *Seaton* v. *State*, 385 S. W. 3d 85, 88–89 (Tex. Crim. App. 2012). Or take some real-life non-driving examples. A shoplifter jumps off a mall's second floor balcony while fleeing security only to land on a customer. See *Craver* v. *State*, 2015 WL 3918057, *2 (Tex. App., June 25, 2015). An experienced skier heads straight down a steep, mogul-filled slope, "back on his skis, arms out to his sides, off-balance"—until he careens into someone else on the hill. *People* v. *Hall*, 999 P. 2d 207, 211 (Colo. 2000). Or a father takes his two-year-old go-karting without safety equipment, and injures her as he takes a sharp turn. See *State* v. *Gimino*, 2015 WL 13134204, *1 (Wis. App., Apr. 15, 2015).

Are these really ACCA predicates? All the defendants in the cases just described acted recklessly, taking substantial and unjustified risks. And all the defendants hurt other people, some seriously, along the way. But few would say their convictions were for "violent felonies." See *Leocal*, 543

U. S., at 4 (holding that a "DUI causing serious bodily in-
jury" is not a "crime of violence").  Few would think their
offenses of a kind "typically committed by" armed career
criminals.  *Begay*, 553 U. S*.,* at 146.  And few would believe
those defendants to pose an exceptional danger of doing
harm were they to possess a gun.  See *id.*, at 145–146.  Ex-
tending the elements clause to reckless offenses would thus
do exactly what *Leocal* decried: "blur the distinction be-
tween the 'violent' crimes Congress sought to distinguish
for heightened punishment and [all] other crimes."  543
U. S., at 11.[8]

The Government's response (echoed in the dissent)—that
statutes covering reckless conduct can also "cover[] classi-
cally violent crimes"—has no purchase given ACCA's cate-
gorical approach.  Brief for United States 41; see *post,* at

_____

[8] The dissent—once again, contrary to the statute's design—would blur
that distinction, on the ground that crimes like reckless driving can
cause great harm.  See *post,* at 32–34.  Of course they can.  But in viewing
that fact as controlling, the dissent runs into not just ACCA but pretty
much all of sentencing law.  That law almost invariably turns on mental
state as well as harm.  Consider the Tennessee statute giving rise to this
case.  Borden's reckless assault conviction carried a sentence of two to
twelve years; but had he been convicted of purposeful or knowing assault,
the sentencing range would have been three to fifteen years.  Compare
Tenn. Code Ann. §§39–13–102(2), 40–35–111(b)(4), with §§39–13–102(1),
40–35–111(b)(3).  In imposing lesser penalties for recklessness, Tennes-
see—like the mine run of States with similar penalty schemes—is not
suggesting that such offenses are "benign."  *Post,* at 15.  They are recog-
nizing, though, that mental state matters to culpability—and more, that
an act done recklessly often should not receive as harsh a punishment as
the same act done purposefully or knowingly, even when the two cause
the same harm.  That approach is the one ACCA takes in reserving en-
hanced penalties for multiple instances of purposeful and knowing, but
not reckless, conduct.  The dissent would write a different statute, based
on a different theory of criminal punishment.  But the dissent's preferred
approach is not the one Congress enacted into law.  And the dissent does
not get to tell Congress that, in writing the statute it wrote, it failed to
enhance penalties for gun possession enough.

34–37. The Government lists, for example, several prose-
cutions for serious beatings brought under the Tennessee
law prohibiting reckless aggravated assault. See Brief for
United States 42 (describing cases in which a defendant
"slamm[ed] his fist into the face of a man" and another de-
fendant "looked the victim directly in the eye" and kicked
her). In those cases, the State presumably decided to
charge a defendant with reckless (rather than purposeful or
knowing) assault because of some problem or idiosyncrasy
in the case. (In the two cases described, for instance, one of
the defendants was high on drugs, and the other had a plau-
sible self-defense claim.) But under the categorical ap-
proach, the existence of such cases is neither here nor there.
An offense does not qualify as a "violent felony" unless the
*least* serious conduct it covers falls within the elements
clause. See *Moncrieffe* v. *Holder*, 569 U. S. 184, 190–191
(2013) ("Because we examine what the state conviction nec-
essarily involved, not the facts underlying the case, we
must presume that the conviction rested upon nothing more
than the least of the acts criminalized" (alterations and in-
ternal quotation marks omitted)); *supra,* at 2–3. That ap-
proach is under-inclusive by design: It *expects* that some vi-
olent acts, because charged under a law applying to non-
violent conduct, will not trigger enhanced sentences. So
what matters are not the convictions the Government of-
fers, but those for, say, running a stop sign or skiing too
wildly. Because a law criminalizing recklessness covers—
indeed, was likely designed for—that kind of conduct, the
offense cannot count as a violent felony.

## C

To all of this, the Government offers one main response:
this Court's decision in *Voisine*. (And again, the dissent re-
iterates the Government's arguments. See *post,* at 23–30.)
As described earlier, *Voisine* held that the definition of
"misdemeanor crime of domestic violence"—featuring the

simple phrase "use of physical force"—includes reckless conduct. 18 U. S. C. §§922(g)(9), 921(a)(33)(A); see *supra,* at 6–7. The Government acknowledges that *Voisine* expressly left open the question presented here. See 579 U. S., at ___, n. 4 (slip op., at 7, n. 4). But in the Government's view, the "logic" of that decision establishes that ACCA's elements clause, too, covers reckless offenses. Brief for United States 14. "*Voisine*'s key insight," the Government says, "is that the word 'use' refers to the 'act of employing something' and does not require a purposeful or knowing state of mind." *Ibid.* (internal quotation marks omitted). That insight, the Government concludes, "applies equally to the ACCA's elements clause." *Id.,* at 8. But the Government's argument ignores the textual difference between the two statutes—not the word "use" (which is indeed the same), but the "against" phrase on which our holding is based. And so too, the argument disregards how the context and purpose of the statute in *Voisine* diverge from those of ACCA's elements clause.

Most important, the two statutes' texts, when read in their entirety, refute the Government's (and the dissent's) position. The domestic violence definition in *Voisine* refers only to offenses involving the "use of physical force"; it lacks the ensuing phrase "against the person of another." *Voisine* thus focused exclusively on the word "use"—as the Court noted, "[t]he only statutory language either party [thought] relevant." 579 U. S., at ___ (slip op., at 5). That word, the Court explained, requires a volitional act, but not a purposeful or knowing *mens rea.* See *id.*, at ___–___ (slip op., at 5–6). And so we would say again today. For the *mens rea* requirement we find in ACCA's elements clause does not come from the word "use." It instead comes from modifying language that is missing in the domestic-violence provision (and missing, too, in the Government's argument): "against the person of another." That phrase, as *Leocal* recognized, is not window dressing: It is the "critical" text for

deciding the level of *mens rea* needed. 543 U. S., at 9. As we have explained, "against the person of another," when modifying the "use of physical force," introduces that action's conscious object. See *supra,* at 9–10. So it excludes conduct, like recklessness, that is not directed or targeted at another. Because *Voisine* construed a statutory provision without that intent-laden language, the decision cannot tell us what ACCA's elements clause requires. See *Walker* v. *United States*, 931 F. 3d 467, 469–470 (CA6 2019) (Kethledge, J., dissenting from denial of reh'g en banc) ("*Voisine* tells us what 'use' means, not what 'against the person of another' means"). Thus does a "difference in text yield[] a difference in meaning." *Id.*, at 468.[9]

———————

[9] In one paragraph of its brief, the Government tries to erase this textual difference by invoking a sentence in *Voisine* that uses the word "against." See Brief for United States 24. (The dissent does the same, if at greater length. See *post,* at 19–20, 26–27.) Recall that the domestic violence statute bars someone from owning a gun if he has been convicted of a misdemeanor that has, as an element, the "use" of physical force "committed by a current or former spouse, parent, or guardian of the victim" or by a person in another of three specified relations with the victim. §921(a)(33)(A); see *supra,* at 6–7. Rather than echo that awkward construction, the Court used shorthand, describing the statute as applying to a person with a "misdemeanor conviction for the 'use . . . of physical force' against a domestic relation." 579 U. S., at ___ (slip op., at 12). In the Government's view, that line shows that we "treated the statute *as if* it contained a prepositional phrase similar to the ACCA's" (and still found it to include reckless conduct). Brief for United States 24. We think that a stretch. The locution shows only that sometimes we do not paraphrase complex statutory language as well as we might. (*Mea culpa*.) What matters in *Voisine* is not a one-line description, but a pages-long analysis of the statutory text—and that discussion gives no support to the Government. Rather than imply an "against" clause, *Voisine* focused like a laser on the meaning of "use"—because we understood the statute to say nothing else. See, *e.g.,* 579 U. S., at ___ (slip op., at 5) ("Nothing in the word 'use'—which is the only statutory language either party thinks relevant—indicates that §922(g)(9) applies exclusively to knowing or intentional domestic assaults."); *id.*, at ___ (slip op., at 6) (citing examples to show "the ordinary meaning of the word 'use'"). "[T]he language of an opinion," we have stated, "is not always to be

Likewise, context and purpose distinguish the two statutes. The provision in *Voisine* defines not a "violent felony" but a "misdemeanor crime of domestic violence." It focuses on those convicted not of serious felony offenses, but instead of "garden-variety assault or battery misdemeanors." 579 U. S., at \_\_\_ (slip op., at 8). And it captures not "violent, active" conduct alone, see *supra,* at 16–17, but also "acts that one might not characterize as 'violent' in a nondomestic context." *United States* v. *Castleman*, 572 U. S. 157, 165 (2014) (referring to "[m]inor uses of force" like "grabbing [and] pinching"). Given those surrounding differences in coverage, it is hardly remarkable that the domestic violence provision would include reckless behavior when ACCA's elements clause does not. And relatedly, the two statutes accomplish dissimilar things. The provision in *Voisine* adds misdemeanant domestic abusers to a long list of people (including felons, substance abusers, and the mentally ill) disqualified from possessing a gun. See §922(g)(1)–(9); *Castleman*, 572 U. S., at 166–167. The recidivist offenders to whom ACCA applies are already subject to that disability. The statute additionally imposes on them—precisely because they are "armed career criminals," not ordinary offenders—greatly enhanced prison sentences. So again, we see nothing surprising—rather, the opposite—in the two statutes' dissimilar treatment of reckless crimes.

## IV

Offenses with a *mens rea* of recklessness do not qualify as violent felonies under ACCA. They do not require, as ACCA does, the active employment of force against another person. And they are not the stuff of armed career criminals. The judgment below is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

parsed as though we were dealing with language of a statute." *Reiter* v. *Sonotone Corp.*, 442 U. S. 330, 341 (1979). And that is most obviously true when an opinion's language revises (for easier reading) the statute's own. Better to heed the statutory language proper.

# SUPREME COURT OF THE UNITED STATES

_____

No. 19–5410

_____

## CHARLES BORDEN, JR., PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 10, 2021]

JUSTICE THOMAS, concurring in the judgment.

This case forces us to choose between aggravating a past error and committing a new one. I must choose the former. Although I am "reluctant to magnify the burdens that our [erroneous] jurisprudence imposes," *Ring* v. *Arizona*, 536 U. S. 584, 610 (2002) (Scalia, J., concurring), I conclude that the particular provision at issue here does not encompass petitioner's conviction for reckless aggravated assault, even though the consequences of today's judgment are at odds with the larger statutory scheme. The need to make this choice is yet another consequence of the Court's vagueness-doctrine cases like *Johnson* v. *United States*, 576 U. S. 591 (2015).

I

The Armed Career Criminal Act provides enhanced penalties for criminals convicted of certain firearms offenses who have at least "three previous convictions . . . for a violent felony or a serious drug offense." 18 U. S. C. §924(e)(1). As relevant here, the Act defines a "violent felony" as a "crime punishable by imprisonment for a term exceeding one year" that either "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the elements clause) or "involves conduct that

presents a serious potential risk of physical injury to an-
other" (the residual clause). §924(e)(2)(B).[1]

The question presented here is whether the elements
clause encompasses petitioner's conviction under Tennes-
see law for reckless aggravated assault. It does not. The
plurality focuses on the latter part of the operative lan-
guage: "against the person of another." I rest my analysis
instead on a separate phrase: "use of physical force." As I
have explained before, a crime that can be committed
through mere recklessness does not have as an element the
"use of physical force" because that phrase "has a well-un-
derstood meaning applying only to intentional acts de-
signed to cause harm." *Voisine* v. *United States*, 579 U. S.
686, ___, ___ (2016) (THOMAS, J., dissenting) (slip op., at 2,
16). The elements clause does not encompass petitioner's
conviction because the statute under which he was con-
victed could be violated through mere recklessness.

But although the Court's conclusion that petitioner's con-
viction does not satisfy the elements clause is sound, the
implication that he is something other than an "armed ca-
reer criminal" is not. The state law here prohibits "[r]eck-
lessly . . . [c]aus[ing] serious bodily injury to another."
Tenn. Code Ann. §39–13–102(a)(2)(A) (2003). That offense
would satisfy the residual clause because it "involves con-
duct that presents a serious potential risk of physical injury
to another." §924(e)(2)(B)(ii). So although the elements
clause does not make petitioner an armed career criminal,
the residual clause would.

The problem is that *Johnson* held that the residual clause
is "unconstitutionally vague" and thus unenforceable. 576
U. S., at 597. This left prosecutors and courts in a bind.
Many offenders had committed violent felonies, but *John-
son* foreclosed invoking the residual clause to establish that

---

[1] The definition also covers any felony that "is burglary, arson, or ex-
tortion" or "involves use of explosives." §924(e)(2)(B)(ii).

fact.  The workaround was to read the elements clause broadly.  But the text of that clause cannot bear such a broad reading.

## II

There is a straightforward solution to this dilemma— overrule *Johnson*.[2]  *Johnson* declared the residual clause not just too vague as applied in that case but also facially vague—meaning that the residual clause could never be employed consistent with the Constitution.  That decision was wrong for at least two reasons.

First, to "pronounce that the statute is unconstitutional in *all* applications . . . seems to me no more than an advisory opinion—which a federal court should never issue at all." *Chicago* v. *Morales*, 527 U. S. 41, 77 (1999) (Scalia, J., dissenting).  Courts have no authority to "'strik[e] down'" statutory text.  See *United States* v. *Sineneng-Smith*, 590 U. S. \_\_\_, \_\_\_ (2020) (THOMAS, J., concurring) (slip op., at 6); see also Mitchell, The Writ-of-Erasure Fallacy, 104 Va. L. Rev. 933, 936 (2018).  Nor may courts resolve "general questions of legality" by "provid[ing] relief beyond the parties to the case." *Trump* v. *Hawaii*, 585 U. S. \_\_\_, \_\_\_, \_\_\_ (2018) (THOMAS, J., concurring) (slip op., at 6, 8).  A court may only "'adjudge the legal rights of litigants in actual controversies.'" *United States* v. *Raines*, 362 U. S. 17, 21 (1960).  When faced with a criminal statute too vague for the case at hand, the right answer likely is to apply the rule of lenity and "declin[e] to apply [the statute] on a case-by-case basis." *Sessions* v. *Dimaya*, 584 U. S. \_\_\_, \_\_\_ (2018) (THOMAS, J., dissenting) (slip op., at 4).  By, instead, purporting to decide theoretical cases for theoretical parties not

---

[2] *Johnson* has already upended many statutes. *United States* v. *Davis*, 588 U. S. \_\_\_ (2019); *Sessions* v. *Dimaya*, 584 U. S. \_\_\_ (2018); *Welch* v. *United States*, 578 U. S. 120 (2016) (making *Johnson* retroactive).  And the parties agree that more are likely to follow.

before the Court, *Johnson* departed from foundational lim-its on the judicial power.

Second, even assuming that the petitioner's plea for facial relief was cognizable, *Johnson* deviated from the usual le-gal standard. To obtain facial relief, a plaintiff normally "must establish that no set of circumstances exists under which the Act would be valid." *E.g., United States* v. *Sa-lerno*, 481 U. S. 739, 745 (1987). That is because a facial challenge, if successful, has the same effect as "nullify[ing]" a statute. *Ayotte* v. *Planned Parenthood of Northern New Eng.*, 546 U. S. 320, 329 (2006). The petitioner in *Johnson* did not satisfy that standard. Indeed, the *Johnson* majority acknowledged that "there will be straightforward cases un-der the residual clause, because some crimes clearly pose a serious potential risk of physical injury to another." 576 U. S., at 602.

These errors show that this Court in *Johnson* not only misapplied the Due Process Clause but also exercised the legislative role. Legislatures alone have authority "to pre-scribe general rules for the government of society." *Fletcher* v. *Peck*, 6 Cranch 87, 136 (1810). Courts, by contrast, have authority to provide only those "remed[ies that are] tailored to redress the plaintiff's particular injury." *Gill* v. *Whit-ford*, 585 U. S. ___, ___ (2018) (slip op., at 21). Simply put, where enforcement of a law would conflict with the Consti-tution, a court has authority under the Supremacy Clause to enjoin enforcement, but a court cannot, consistent with separation of powers, enjoin enforcement of a statute where enforcement would be lawful. *Johnson*, however, conducted the "quintessentially legislative work" of altering the legal rules that would apply in cases where the residual clause could lawfully be enforced. See *Planned Parenthood of Northern New Eng.*, 546 U. S., at 329–330.

## III

I hesitate to give petitioner the benefit of *Johnson*, because his crime is a "violent felony" as Congress defined the term. Indeed, in other contexts, I have resisted exacerbating similar errors. See *Pepper* v. *United States*, 562 U. S. 476, 518–520 (2011) (dissenting opinion) (declining to apply this Court's erroneous holding that the Sentencing Guidelines are never mandatory). Yet I reluctantly conclude that I must accept *Johnson* in this case because to do otherwise would create further confusion and division about whether state laws prohibiting reckless assault satisfy the elements clause.[3] See *Vance* v. *Ball State Univ.*, 570 U. S. 421, 450–451 (2013) (THOMAS, J., concurring). I therefore concur in the judgment.

---

[3] Voting to affirm petitioner's sentence here would lead to a 5 to 4 judgment that petitioner's sentence is correct even though five Justices conclude that Tennessee reckless aggravated assault does not satisfy the elements clause. That kind of fractured reasoning would be difficult for lower courts to apply.

# SUPREME COURT OF THE UNITED STATES

———————

No. 19–5410

———————

## CHARLES BORDEN, JR., PETITIONER *v.*
## UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 10, 2021]

JUSTICE KAVANAUGH, with whom THE CHIEF JUSTICE, JUSTICE ALITO, and JUSTICE BARRETT join, dissenting.

In 1984, Congress passed and President Reagan signed the Armed Career Criminal Act, known as ACCA. That Act seeks to prevent individuals with a serious record of violent crimes from unlawfully possessing firearms and committing additional violent crimes. As amended in 1986, the Act generally mandates a minimum 15-year prison sentence for any felon who has amassed at least three prior convictions for a "violent felony" and then commits a fourth felony by unlawfully possessing firearms.

ACCA defines the predicate "violent felony" offenses to cover, among other things, an offense punishable by a prison term exceeding one year that "has as an element the use, attempted use, or threatened *use of physical force against the person of another*." 18 U. S. C. §924(e)(2)(B)(i) (emphasis added). By defining violent felony in that manner, Congress ensured that the prototypical felonies involving physical force against a person—in particular, assault, homicide, rape, and robbery—would qualify as predicate offenses under ACCA.

ACCA does not ensnare low-level offenders or small-time criminals. Rather, as relevant here, ACCA applies only to individuals who have been previously convicted of *three* separate violent felonies committed on different occasions, and

who then proceed to commit a *fourth* felony by unlawfully possessing firearms. Congress determined that those serial violent felons pose serious risks of harm to American communities and warrant a 15-year mandatory minimum sentence under ACCA.[1]

In this case, Charles Borden was convicted in 2018 for unlawfully possessing a firearm in violation of §922(g)(1). The District Court concluded that Borden was subject to ACCA because of his three prior convictions in 2002, 2003, and 2007 for aggravated assault under Tennessee law.[2]

Borden does not dispute that his 2002 and 2003 Tennessee felony convictions—which were for *intentional or knowing* aggravated assault—constituted violent felonies for purposes of ACCA. But he challenges the classification of his 2007 Tennessee felony conviction—which was for *reckless* aggravated assault. Borden argues that reckless felonies do not qualify as predicate offenses under ACCA. According to Borden, a crime committed recklessly, such as reckless assault or reckless homicide, does not entail the "use of physical force against the person of another." Instead, Borden contends, only intentional or knowing felonies satisfy that statutory definition.

Most States criminalize reckless assault and reckless

---

[1] ACCA also includes serious drug offenses as qualifying predicates. 18 U. S. C. §924(e)(2)(A). That aspect of ACCA is not at issue here.

[2] Tennessee's aggravated assault statute provides: "A person commits aggravated assault who:

"(1) Intentionally or knowingly commits an assault as defined in §39–13–101 and:

"(A) Causes serious bodily injury to another; or

"(B) Uses or displays a deadly weapon; or

"(2) Recklessly commits an assault as defined in §39–13–101(a)(1), and:

"(A) Causes serious bodily injury to another; or

"(B) Uses or displays a deadly weapon." Tenn. Code Ann. §39–13–102 (2003).

homicide. And the Model Penal Code and most States provide that recklessness as to the consequences of one's actions generally suffices for criminal liability. Importantly, moreover, Borden does not dispute that ACCA's phrase "use of physical force" *on its own* would include reckless offenses, such as reckless assault or reckless homicide. But Borden nonetheless contends that ACCA's phrase "use of physical force *against the person of another*" somehow excludes those same reckless offenses, including reckless assault and reckless homicide.

To put Borden's argument in real-world terms, suppose that an individual drives a car 80 miles per hour through a neighborhood, runs over a child, and paralyzes her. He did not intend to run over and injure the child. He did not know to a practical certainty that he would run over and injure the child. But he consciously disregarded a substantial and unjustifiable risk that he would harm another person, and he is later convicted in state court of reckless assault. Or suppose that an individual is in a dispute with someone in the neighborhood and begins firing gunshots at the neighbor's house to scare him. One shot goes through the window and hits the neighbor, killing him. The shooter may not have intended to kill the neighbor or known to a practical certainty that he would do so. But again, he consciously disregarded a substantial and unjustifiable risk that he would harm someone, and he is later convicted in state court of reckless homicide.

Surprisingly, the Court today holds that those kinds of reckless offenses such as reckless assault and reckless homicide do not qualify as ACCA predicates under the use-of-force clause. The plurality does not dispute that those offenses involve the "use of physical force," but concludes that those offenses do not involve the "use of physical force *against the person of another*." The plurality reaches that rather mystifying conclusion even though someone who

acts recklessly, as those examples show, has made a "deliberate decision to endanger another," *Voisine* v. *United States*, 579 U. S. 686, ___ (2016) (slip op., at 7), and even though an individual who commits a reckless assault or a reckless homicide generally inflicts injury or death on another person. The plurality reaches that conclusion even though most States (both as of 1986 and today) criminalize reckless assault and reckless homicide as offenses against the person, and even though Congress enacted ACCA's use-of-force clause in 1986 to cover the prototypical violent crimes, such as assault and homicide, that can be committed with a *mens rea* of recklessness. And the plurality reaches that conclusion even though the Court concluded just five years ago (when interpreting a similarly worded domestic violence statute) that reckless offenses such as reckless assault and reckless homicide *do* entail the use of physical force against another person—there, "against a domestic relation" or "victim." See *id.,* at ___ (slip op., at 12); 18 U. S. C. §921(a)(33)(A).

In my view, the Court's decision disregards bedrock principles and longstanding terminology of criminal law, misconstrues ACCA's text, and waves away the Court's own recent precedent. The Court's decision overrides Congress's judgment about the danger posed by recidivist violent felons who unlawfully possess firearms and threaten further violence. I respectfully dissent.[3]

---

[3] Just to explain today's lineup: Four Justices form the plurality. JUSTICE THOMAS concurs in the judgment. He agrees with the plurality's result but not its reasoning, and concludes that the phrase "use of physical force" *alone* excludes reckless offenses such as reckless assault or reckless homicide. The Court reached a different conclusion in interpreting a similarly worded statute in *Voisine* v. *United States*, 579 U. S. 686 (2016). But JUSTICE THOMAS indicates that he will not follow that precedent in this case. (Importantly, unlike the plurality, JUSTICE THOMAS does not rely on the phrase "against the person of another.")

JUSTICE THOMAS further explains that reckless offenses *were* covered

## I

The Court holds that the phrase "use of physical force against the person of another" in ACCA's violent felony definition applies only to crimes that entail an intentional or knowing use of force against another person, not to crimes that entail a reckless use of force against another person. In reaching that conclusion, the plurality does not dispute that the statutory phrase "use of physical force" on its own would encompass reckless offenses such as reckless assault and reckless homicide. See *ante,* at 6–7; see also *Voisine* v. *United States*, 579 U. S. 686 (2016). But the plurality seizes on the additional phrase "against the person of another." According to the plurality, the combined statutory phrase "use of physical force against the person of another" excludes reckless offenses such as reckless assault and reckless homicide.

As a matter of textual interpretation, that analysis is seriously flawed for two independent reasons, either of which suffices to defeat the plurality's conclusion. First, the phrase "against the person of another" in criminal statutes like ACCA has zero to do with *mens rea.* That phrase instead reflects a centuries-old term of art in the criminal law that distinguishes offenses against the person from offenses

---

by ACCA under the residual clause. But that clause was declared unconstitutional in *Johnson* v. *United States*, 576 U. S. 591 (2015). Although JUSTICE THOMAS disagrees with *Johnson*, he indicates that he will today follow the Court's *Johnson* precedent, albeit not the *Voisine* precedent.

So we find ourselves in an unusual situation. In *Voisine*, seven Justices agreed that the phrase "use of physical force" in a similarly worded statute covers reckless offenses. And eight Justices today accept that the phrase "use of physical force" covers reckless offenses. Moreover, five Justices today agree that ACCA's text, properly interpreted, would cover reckless offenses. And only four Justices conclude that the phrase "against the person of another" addresses *mens rea* and excludes reckless offenses. Yet despite all of that, Borden prevails, and reckless offenses are now *excluded* from ACCA's scope. That outcome is anomalous.

against property. Second, even if the phrase "against the person of another" did not reflect a longstanding term of art, the ordinary meaning of the statutory phrase "use of physical force against the person of another"—just like the phrase "use of physical force"—encompasses reckless offenses such as reckless assault and reckless homicide.

## A

*First*, and most fundamentally, the phrase "against the person of another" in ACCA has zero to do with the required *mens rea* for predicate violent felonies. That phrase simply incorporates established nomenclature for classifying crimes and reflects a longstanding criminal-law term of art that distinguishes offenses against the *person* from offenses against *property*. As the Government explains, that phrase simply "limits the scope" of the use-of-force clause to "crimes involving force applied to another person, thereby excluding many property crimes, like arson." Brief for United States 23.

When Congress "borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice," we generally assume that Congress "knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." *Morissette* v. *United States*, 342 U. S. 246, 263 (1952); see also *Air Wisconsin Airlines Corp.* v. *Hoeper*, 571 U. S. 237, 248 (2014); *Sekhar* v. *United States*, 570 U. S. 729, 733 (2013); A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 73–77, 305 (2012).

So it is here. For centuries, criminal offenses have typically been broken down into categories—including, most prominently, offenses against the person and offenses against property.

An offense against the person is often defined as a "crime against the body of another human being." Black's Law

Dictionary 1302 (11th ed. 2019) ("offense against the person").  The object of the offense is a person.  Those offenses include, for example, assault, homicide, rape, and robbery.

An offense against property is often defined as a "crime against another's personal property."  *Ibid.* ("offense against property").  The object of the offense is property. Those offenses include, for example, burglary, arson, extortion, fraud, and destruction of property.

That nomenclature has a long historical pedigree originating in the common law.  Blackstone, for example, sets forth various categories of "Public Wrongs," which include "Offences *against* the Persons of Individuals" and "Offences *against* Private Property."  4 Commentaries on the Laws of England, chs. 15, 17 (1769) (emphasis in original); see also H. Stephen, Summary of the Criminal Law (1834) (setting forth categories of criminal offenses including "Offences against the Person" and "Larceny and Other Offences against Property"); W. Auckland, Principles of Penal Law (2d ed. 1771) (setting forth categories of criminal offenses including "[o]ther Crimes relative to the Persons of Individuals" and "Crimes relative to Property").

Those classifications remain prevalent today.  Like Blackstone, most state criminal codes categorize criminal offenses and employ the terminology of offenses against the person and offenses against property.[4]

––––––––––

[4] See Ala. Code, Tit. 13A, chs. 6, 7 (2015); Alaska Stat., Tit. 11, chs. 41, 46 (2018); Ark. Code Ann., Tit. 5, subds. 2, 4 (1983); Cal. Penal Code Ann., pt. 1, Tits. 8, 13 (West Cum. Supp. 2021); Colo. Rev. Stat., Tit. 18, Arts. 3, 4 (2019); Del. Code Ann., Tit. 11, pt. I, ch. 5, subchs. II, III (2021); Ga. Code Ann., Tit. 16, chs. 5, 7 (2019); Haw. Rev. Stat., Tit. 37, chs. 707, 708 (2014); Ill. Comp. Stat., ch. 720, Act 5, Tit. III, pts. B, C (West 2018); Ind. Code, Tit. 35, Arts. 42, 43 (2020); Kan. Stat. Ann., ch. 21, Arts. 54, 58 (2020); La. Rev. Stat. Ann., Tit. 14, ch. 1, pts. 2, 3 (2016); Me. Rev. Stat. Ann., Tit. 17–A, pt. 2, ch. 9 (2006); Md. Crim. Law Code Ann., Tits. 3, 6 (2012); Mass. Gen. Laws, pt. IV, Tit. 1, chs. 265, 266 (2017); Minn. Stat., ch. 609 (2020); Miss. Code Ann., Tit. 97, chs. 3, 17 (2020); Mo. Rev. Stat., Tit. 38, ch. 565 (2016); Mont. Code Ann., Tit. 45, chs. 5, 6 (2020);

KAVANAUGH, J., dissenting

That was also true back in 1986 when Congress amended ACCA to include the use-of-force clause. Tennessee's criminal code illustrates the point. As of 1986, criminal offenses under Tennessee law fell under one of several chapter headings, including "Offenses Against the Person" and "Offenses Against Property," among others. See Tenn. Code. Ann., Tit. 39, chs. 2, 3 (1982). At least 32 other state criminal codes employed similar nomenclature at the time of ACCA's amendment in 1986.[5]

_____

Neb. Rev. Stat., ch. 28, Arts. 3, 5 (2021); Nev. Rev. Stat., Tit. 15, chs. 200, 205 (2017); N. J. Stat. Ann., Tit. 2C, subd. 2, pts. 1, 2 (2019); N. Y. Penal Law Ann., ch. 40, pt. 3, Tits. H, I (2009); N. C. Gen. Stat. Ann., ch. 14, subchs. III, V (2019); N. D. Cent. Code Ann., Tit. 12, pts. V, VI (2012); Okla. Stat., Tit. 21, pts. III, VII (2011); Ore. Rev. Stat., Tit. 16, chs. 163, 164 (2019); S. C. Code Ann., Tit. 16, chs. 3, 11 (2015); Tenn. Code Ann., Tit. 39, chs. 13, 14 (2020); Tex. Penal Code Ann., Tits. 5, 7 (West 2021); Utah Code Ann., Tit. 76, chs. 5, 6 (2017); Va. Code Ann., Tit. 18.2, chs. 4, 5 (2014); W. Va. Code Ann., ch. 61, Arts. 2, 3 (2020); Wis. Stat., chs. 940, 943 (2016); Wyo. Stat. Ann., Tit. 6, chs. 2, 3 (2019).

[5] See Ala. Code, Tit. 13A, chs. 6, 7 (1982); Alaska Stat., Tit. 11, chs. 41, 46 (1983); Ark. Code Ann., Tit. 41, Arts. 5, 6 (Cum. Supp. 1985); Cal. Penal Code Ann., pt. I, Tits. 8, 13 (1984); Colo. Rev. Stat., Tit. 18, Arts. 3, 4 (1986); Del. Code Ann., Tit. 11, pt. 1, ch. 5, subchs. II, III (1979); Ga. Code Ann., Tit. 16, chs. 5, 7 (1984); Haw. Rev. Stat., Tit. 37, chs. 707, 708 (1985); Ill. Ann. Stat., Tit. III, pts. B, C (West 1980); Ind. Stat. Ann., Tit. 35, Arts. 42, 43 (1985); Kan. Stat. Ann., ch. 21, Arts. 34, 37 (1981); La. Rev. Stat. Ann., Tit. 14, ch. 1, pts. II, III (West 1986); Me. Rev. Stat. Ann., Tit. 17–A, ch. 9 (1983); Mass. Gen. Laws, chs. 265, 266 (1986); Minn. Stat., ch. 609 (1986); Miss. Code Ann., Tit. 97, chs. 3, 17 (1973); Mo. Rev. Stat., Tit. 38, ch. 565 (1986); Mont. Code Ann., Tit. 45, chs. 5, 6 (1985); Neb. Rev. Stat., ch. 28, Arts. 3, 5 (1979); Nev. Rev. Stat., Tit. 15, chs. 200, 205 (1986); N. J. Stat. Ann., Tit. 2C, subd. 2, pts. 1, 2 (1982); N. Y. Penal Law Ann., ch. 40, pt. 3, Tits. H, I (West 1975); N. C. Gen. Stat. Ann., ch. 14, subchs. III, V (1981); Okla. Stat., Tit. 21, pts. III, VII (1983); Ore. Rev. Stat., Tit. 16, chs. 163, 164 (1985); Pa. Stat. Ann., Tit. 18, pt. II, Arts. B, C (Purdon 1983); S. C. Code Ann., Tit. 16, chs. 3, 11 (1985); Tex. Penal Code Ann., Tits. 5, 7 (West 1984); Utah Code Ann., Tit. 76, chs. 5, 6 (Cum. Supp. 1986); Va. Code Ann., Tit. 18.2, chs. 4, 5 (1982); W. Va. Code Ann., ch. 61, Arts. 2, 3 (1984); Wis. Stat., chs. 940, 943 (1982); Wyo. Stat. Ann., Tit. 6, chs. 2, 3 (1983).

The Model Penal Code, which was adopted in 1962, likewise uses that nomenclature. The Code identifies two broad categories of crimes as "Offenses Involving Danger to the Person" and "Offenses Against Property." ALI, Model Penal Code, pt. II (1980).

Leading treatises on criminal law similarly group most offenses into those two broad categories: "Offenses Against the Person" and "Offenses Against Property." 2–3 W. LaFave, Substantive Criminal Law, pts. III, IV (3d ed. 2018); 2 C. Torcia, Wharton's Criminal Law, pt. II (15th ed. 1994); 3 *id.*, pt. V (1995); see also 2 W. LaFave & A. Scott, Substantive Criminal Law, chs. 7, 8 (1986) ("Crimes Against the Person" and "Crimes Relating to Property"); 2 Torcia, Wharton's Criminal Law, pt. II (14th ed. 1979) ("Offenses Against the Person"); 3 *id.*, pt. V (1980) ("Offenses Against Property").

As those many examples show, the phrase "offenses against the person" may be worded in slightly different ways, but each variation serves to distinguish offenses against the person from other kinds of offenses, including offenses against property. Cf. Black's Law Dictionary, at 1302 (cross-referencing definition of "offense against the person" with "crimes against persons").

In 1986, Congress amended ACCA to cover violent felonies. Not surprisingly, ACCA's definition of "violent felony" tracks that historically rooted and still common nomenclature. The definition provides in relevant part:

> "[T]he term 'violent felony' means any *crime* punishable by imprisonment for a term exceeding one year . . . that—
> "(i) has as an element the use, attempted use, or threatened *use of physical force against the person of another*; or
> "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents

a serious potential risk of physical injury to another."
18 U. S. C. §924(e)(2)(B) (emphases added).

The first clause of the violent felony definition (the use-of-force clause) encompasses offenses involving force *against the person*—and thus necessarily includes assault, homicide, rape, and robbery.[6] The second clause of that definition (the enumerated-offenses clause) lists certain physically risky offenses *against property*—in particular, burglary, arson, extortion, and offenses involving the use of explosives. See *Taylor* v. *United States*, 495 U. S. 575, 584–587 (1990).

This Court's precedents have drawn that same distinction when analyzing ACCA's violent felony definition. In *Begay* v. *United States*, for example, the Court stated that violent felonies under ACCA "include both crimes against the person (clause (i)) and certain physically risky crimes against property (clause (ii))." 553 U. S. 137, 144 (2008).

The statutory history further illustrates the distinction. When originally enacted in 1984, ACCA covered only robbery (an offense against the person) and burglary (an offense against property). 18 U. S. C. App. §1202(a) (1982 ed., Supp. II). In 1986, Congress expanded the scope of violent crimes covered under ACCA. Congress added the use-of-force clause so as to encompass not just robbery but also additional offenses against the person, such as assault, homicide, and rape. And Congress added the second clause to encompass not just burglary but also some additional physically risky offenses against property, including arson, extortion, and use of explosives.[7]

---

[6] The words "of another" in the use-of-force clause exclude crimes involving harm to oneself, as opposed to others, and reflect common phraseology in state criminal statutes covering offenses against the person, such as assault. See, *e.g.,* Tenn. Code Ann. §39–13–102 (aggravated assault is an assault that, among other things, "[c]auses serious bodily injury to another").

[7] That understanding of offenses against the person and offenses

In short, the phrase "against the person of another" in ACCA specifies the category of crimes to which the use-of-force clause applies and limits the reach of the clause by excluding other categories of crimes—in particular, crimes against property.

That understanding of the phrase "against the person of another" also helps to make sense of other, similarly worded statutory definitions. Take 18 U. S. C. §16(a), which defines the term "crime of violence" for purposes of many other federal criminal and immigration laws. That definition includes any "offense that has as an element the use, attempted use, or threatened use of physical force *against the person or property of another*." *Ibid.* (emphasis added). Like ACCA's use-of-force clause, §16(a)'s "against" phrase simply specifies the category of offenses to which the statute applies, using established nomenclature. The only difference between the two definitions is that §16(a) covers

---

against property also helps make more sense of the now-defunct residual clause. See *Johnson*, 576 U. S. 591. The residual clause was tacked onto the clause enumerating the covered offenses against property (burglary, arson, extortion, and use of explosives). The residual clause covered crimes that "otherwise involv[e] conduct that presents a serious potential risk of physical injury to another." 18 U. S. C. §924(e)(2)(B)(ii). When still extant, the residual clause could have been read in one of two ways. On one reading, given its placement with offenses against property, the residual clause could have been read to encompass other physically risky offenses against property similar to burglary, arson, extortion, and use of explosives. A second possible reading (and the common reading when the residual clause was still in effect) was that the residual clause also covered some offenses against the person, not just offenses against property. But even assuming that second reading was correct, and that there was potential overlap between the use-of-force clause and the residual clause, the solution was not to read the use-of-force clause contrary to its terms. No one disputes that the use-of-force clause generally covers assault and homicide, among other crimes. The residual clause was merely residual—a catchall. Therefore, as relevant here, even if assault and homicide could theoretically have fit under the old residual clause, that would not negate coverage of assault and homicide under the use-of-force clause.

crimes "against property" in addition to crimes "against the person."[8]

Finally, state practice confirms that the phrase "against the person of another" in ACCA reflects a longstanding term of art and is not an oblique and novel way of excluding reckless offenses. As of 1986, when Congress amended ACCA to include the use-of-force clause, 28 States had reckless assault statutes, and more than 30 States had statutes that covered reckless homicide. See Brief for United States 19–21, and nn. 4–7. Most of those States classified those crimes as offenses against the person, see n. 5, *supra*— even though those crimes only required a *mens rea* of recklessness.

Congress legislated against the backdrop of those state criminal laws. It strains credulity to say that in ACCA, Congress both (i) mirrored the traditional "against the person" terminology from those state criminal codes that included reckless assault and reckless homicide, but (ii) nonetheless silently intended that common and traditional language to take on a novel and obscure meaning that would exclude reckless assault and reckless homicide. As the Court has stated before, we "should not lightly conclude that Congress enacted a self-defeating statute." *Quarles* v. *United States*, 587 U. S. ___, ___ (2019) (slip op., at 8); see also *Stokeling* v. *United States*, 586 U. S. ___, ___ (2019) (slip op., at 8). If Congress in 1986 wanted to exclude from ACCA's scope all of those state criminal laws covering reckless crimes against the person—including reckless assaults and reckless homicides—Congress easily could have said

———————

[8]The plurality says that reading ACCA's "against" phrase to refer to the category of covered offenses would leave the broader language in statutes like §16(a) "without any function." *Ante,* at 12. That is incorrect. The "against" phrase in statutes like §16(a) clarifies that the statutory definition encompasses *both* of those traditional categories of offenses: offenses against the person *and* offenses against property.

(and surely would have said) that only "intentional or know-
ing" uses of force were covered. It did not. And we should
not disregard the longstanding meaning of a criminal-law
term of art—namely, offenses against the person—to smug-
gle into ACCA a new and unusual *mens rea* requirement
that Congress did not see fit to include.

The plurality claims that the exact words "offense against
the person" or "crime against the person" do not appear in
ACCA's use-of-force clause. *Ante,* at 13–15. But in fact,
Congress used the phrase "against the person of another"
in the use-of-force clause to describe the "crime[s]" that are
covered by ACCA. §924(e)(2)(B). By using that language,
Congress incorporated a historically rooted and widely used
nomenclature for classifying crimes, and thus narrowed the
*category* of offenses to which that clause applies—namely,
to offenses *against the person*.

To sum up: The plurality does not dispute that reckless
offenses entail the "use of physical force." The plurality ar-
gues, however, that reckless offenses do not entail the "use
of physical force against the person of another." But the
phrase "against the person of another" reflects longstand-
ing criminal-law nomenclature—a term of art—that speci-
fies the *category* of covered predicate offenses that involve
the use of force, such as assault, homicide, rape, and rob-
bery. That language has zero to do with the *mens rea* re-
quired for predicate offenses under ACCA. That conclusion
should end this case given that the plurality acknowledges
that the phrase "use of physical force" otherwise encom-
passes reckless offenses such as reckless assault and reck-
less homicide.

B

*Second*, in the alternative, even if we divorce the phrase
"against the person of another" from its term-of-art usage
in criminal law, as the plurality mistakenly does, that
phrase as a matter of ordinary meaning still does not speak

to *mens rea* and cannot reasonably be read to exclude reckless offenses such as reckless assault and reckless homicide. Instead, as the Court recognized in *Voisine* v. *United States* in interpreting a "similarly worded" statute covering the "use of physical force," ACCA's use-of-force clause is "indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness" with respect to the consequences of using force. 579 U. S., at ___, ___, n. 4 (slip op., at 6, 8, n. 4).

To understand the ordinary meaning of the phrase "use of physical force against the person of another," first consider that the criminal law ordinarily imposes criminal liability when the defendant acts with intent, knowledge, or recklessness as to the consequences of his actions. A person acts intentionally (or said otherwise, purposefully) with respect to the harmful consequences of his actions if he has those consequences as his "conscious object." Model Penal Code §2.02(2)(a)(i) (1985). A person acts knowingly with respect to the harmful consequences of his actions if he is "aware that it is practically certain that his conduct will cause" those consequences. *Id.*, §2.02(2)(b)(ii). And a person acts recklessly "when he consciously disregards a substantial and unjustifiable risk" that his conduct will result in harm to another person. *Id.*, §2.02(2)(c).

The line between knowing and reckless crimes is thin. The difference between (i) conduct with knowledge as to the consequences on the one hand and (ii) conduct with recklessness as to the consequences on the other hand is that the risk of harm associated with knowledge is somewhat higher than the risk of harm associated with recklessness. In particular, to act with knowledge that harm will occur, a defendant must know that harm is "practically certain" to occur. *Id.*, §2.02(2)(b)(ii). To act with recklessness as to whether harm will occur, a defendant need not know with practical certainty that harm will occur—but he still must *know* that he is disregarding a substantial and unjustifiable

risk that harm will occur. *Id.*, §2.02(2)(c). In other words, he must make a "deliberate decision to endanger another." *Voisine*, 579 U. S., at \_\_\_ (slip op., at 7). As has long been recognized, the difference between knowledge and recklessness as to the consequences of one's actions is one of degree, not of kind.[9]

Reckless conduct is not benign. Reckless conduct "involves conscious risk creation," Model Penal Code §2.02, Comment 3, p. 236 (1985)—a "deliberate decision to endanger another," *Voisine*, 579 U. S., at \_\_\_ (slip op., at 7). And a person who engages in, for example, reckless assault or reckless homicide generally injures or kills another person.[10]

Because the line between knowledge and recklessness can be thin and because reckless crimes such as reckless assault and reckless homicide involve a "deliberate decision to endanger another" that results in injury or death to another person, *ibid.*, the criminal law ordinarily does not draw the line for criminal liability between intent and knowledge on the one hand and recklessness on the other. On the contrary, as the Model Penal Code explains, "[n]o one has doubted" that a reckless mental state is "properly the basis for criminal liability." §2.02, Comment 4, at 243; see generally Turner, The Mental Element in Crimes at

––––––––––

[9] Indeed, a study published in 2011 concluded that individuals had difficulty "differentiat[ing] between knowing and reckless conduct, even with the benefit of jury instructions." Shen, et al., Sorting Guilty Minds, 86 N. Y. U. L. Rev. 1306, 1309 (2011). The authors suggested possibly "abandoning" the distinction because of the inability of most people to distinguish the two categories with respect to particular fact patterns. *Ibid.*

[10] If a state offense labeled as assault did not require that the defendant cause sufficient contact with or injury or death to another person, such an offense presumably would not involve a "use of physical force" under ACCA. Of course, it could still constitute a violent felony under ACCA if the offense entailed the threatened or attempted use of physical force.

Common Law, 6 Camb. L. J. 31 (1936).

Recognizing that basic principle, the Model Penal Code establishes recklessness as the default minimum *mens rea* for criminal offenses when a mental state is not specified. §2.02, Comment 5, at 244. If a more culpable mental state, such as intent or knowledge, is required for a criminal of-fense, "it is conventional to be explicit." *Ibid.* Keep that last sentence in mind when we return to ACCA's text.

Like the Model Penal Code, many States establish reck-lessness as a default minimum *mens rea* for criminal of-fenses.[11] And like the Model Penal Code, most States' crim-inal laws in 1986 provided (and today still provide) that recklessness as to the consequences of a defendant's con-duct often suffices to impose criminal liability, including as to assault and homicide. See, *e.g.,* Brief for United States 19–20, and nn. 4–5 (state reckless assault statutes); 2 LaFave, Substantive Criminal Law §15.4(a), and p. 712, n. 19 (2018) (manslaughter). As of 1986, when Congress amended ACCA to include the use-of-force clause, 28 States had reckless assault statutes, and more than 30 States had statutes that covered some form of reckless homicide. See Brief for United States 19–21, and nn. 4–7.

Importantly, nothing in ACCA's text or context (or its his-tory, for that matter) states or even hints that Congress sought to exclude reckless offenses against the person, such as reckless assault and reckless homicide, from the use-of-force clause. Recall that the Model Penal Code says that "it is conventional to be explicit" when a legislature wants to

--------

[11] See, *e.g.,* Alaska Stat. §11.81.610(b) (1983); Ark. Stat. §41–204(2) (1977); Del. Code Ann., Tit. 11, §251(b) (1979); Haw. Rev. Stat. §702–204 (1985); 2 Ill. Rev. Stat., ch. 38, ¶¶4–3(a), 4–6 (1985); Kan. Stat. Ann. §21–5202(a) (2011); N. D. Cent. Code Ann., §12.1–02–02(1)(e), (2) (1985); Ohio Rev. Code Ann. §2901.21(B) (Lexis 2014); Pa. Stat. Ann., Tit. 18, §302 (Purdon 1983); Tenn. Code Ann. §39–11–301(c) (Cum. Supp. 1990); Tex. Penal Code Ann. §6.02(c) (West 1974); Utah Code Ann. §76–2–102 (Cum. Supp. 1989).

exclude reckless offenses from criminal liability.  §2.02, Comment 5, at 244.  ACCA contains no such explicit language excluding reckless offenses.  The text of ACCA should not be read to *silently* exclude reckless offenses such as reckless assault and reckless homicide.[12]

In short, in enacting ACCA, "Congress must have known it was sweeping in some persons who had engaged in reckless conduct." *Voisine*, 579 U. S., at ___ (slip op., at 8) (citing *United States* v. *Bailey*, 9 Pet. 238, 256 (1835) (Story, J.)).

Consistent with those background principles of *mens rea*, the ordinary meaning of the phrase "use of physical force against the person of another" in ACCA encompasses reckless offenses such as reckless assault or reckless homicide.

The plurality today acknowledges that the phrase "use of physical force" would include reckless offenses.  But according to the plurality, ACCA's phrase "use of physical force against the person of another" does not include reckless offenses.  To distinguish the two, the plurality emphasizes

_____

[12] ACCA's statutory history further supports that conclusion.  In 1984, in the original version of ACCA, Congress included only one offense against the person: robbery. 18 U. S. C. App. §1202(a) (1982 ed., Supp. II).  ACCA expressly defined robbery as a felony that involves the "taking of the property of another from the person or presence of another by force or violence." §1202(c)(8).  At the time, as had been true at common law, see 4 W. Blackstone, Commentaries on the Laws of England 241–242 (1769), many state statutes defined robbery in a way that did not require that the defendant have intent or knowledge that his conduct would cause bodily injury.  In 1986, when Congress expanded the number of violent offenses against the person so as to include crimes such as assault, rape, and homicide in addition to robbery, Congress did not suggest that it suddenly wanted to require intent or knowledge for robbery offenses.  If Congress understood reckless robbery as a taking by force under the 1984 language, it follows that Congress would naturally also have understood reckless robbery as the use of physical force against the person of another under the 1986 statute.  And there is no good reason (textual or otherwise) to think that Congress wanted to include reckless robbery but to exclude reckless assault and reckless homicide from the use-of-force clause.

the word "against."  As the plurality acknowledges, how-
ever, the word "against" is often defined to mean "'mak[ing]
contact with.'"  *Ante,* at 8.  That is the logical meaning of
"against" in the context of ACCA's use-of-force clause, and
that meaning would encompass reckless assaults and reck-
less homicides.

The plurality disagrees, and stresses that the word
"against" in isolation can mean *either* "'in contact with'" *or*
"'[i]n opposition to,'" depending on context.  *Ante,* at 9.  The
plurality contends that the meaning of "against" in the con-
text of the phrase "use of physical force against the person
of another" carries the word's "oppositional" definition and
thus excludes reckless offenses.[13]

The plurality chooses the "in opposition to" definition
because it says, in essence, that it would be incoherent or
gibberish to say that someone *recklessly* used force against
another person.  But the plurality is wrong about that.  As
a matter of ordinary meaning, it is perfectly natural to say
that someone *recklessly* used force against another per-
son.[14]  State and federal reporters, for example, are replete

_____

[13] The plurality also equates "in opposition to" with "targeting."  *Ante,*
at 8–10.  But the plurality cites no dictionaries or similarly authoritative
support for that subtle move in its analysis.  The plurality's equating of
"in opposition to" with "targeting" is seemingly woven out of whole cloth.

[14] Indeed, the plurality eventually seems to acknowledge that point.
After dedicating pages to asserting that the ordinary meaning of the
phrase "use of physical force against the person of another" *necessarily*
requires conduct that is intentionally or knowingly directed at another
person, the plurality concedes that if the word "recklessly" appeared in
ACCA's use-of-force clause, then that clause would in fact "cover reckless
offenses."  *Ante,* at 15.  That is a surprising acknowledgment.  It is hard
to square with the plurality's suggestion that it is not possible for one to
*recklessly* use physical force against another person.  After all, if the plu-
rality's ordinary meaning argument were correct, adding the word "reck-
lessly" to the front of the use-of-force clause would seem to render that
clause nonsensical.  My reading of the statute avoids that incongruity in
the plurality's interpretation by recognizing that the phrase "use of phys-
ical force against the person of another" encompasses reckless

with references to individuals recklessly using force against others. See, *e.g., Neil* v. *Warden, Noble Correctional Inst.*, 2020 WL 489326, *30 (SD Ohio, Jan. 30, 2020) ("The indictments also charged that in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, appellant recklessly used or threatened the immediate use of force against another").[15]

Most tellingly, if one wants to find a really good example of the ordinary meaning, look no further than the Court's opinion in *Voisine* five years ago. There, the Court stated twice in its opinion—in the first and last paragraphs—that the use-of-force statute at issue there covered offenses where an individual *recklessly* used physical force "against a domestic relation."  579 U. S., at ___ (slip op., at 12); see

_____

offenses.

[15] For just a few examples, see *Almonte* v. *Hines*, 2020 WL 1164657, *2 (SDNY, Mar. 11, 2020) ("Plaintiff had not proved by a preponderance of the evidence that Hines intentionally or recklessly used excessive force against Almonte during the arrest"); *Evanston Ins. Co.* v. *Break I, Inc.*, 2019 WL 2995507, *7 (ND Ala., July 9, 2019) ("The security guard intentionally or recklessly used force against a person without her consent by shooting a gun at the male patron and hitting Ms. Beasley"); *O'Hara* v. *New York*, 570 Fed. Appx. 21, 24 (CA2 2014) ("[A] jury could have reasonably found" "that McAvoy intentionally or recklessly used excessive force against O'Hara"); *Whitlock* v. *Jackson*, 754 F. Supp. 1394, 1400 (SD Ind. 1991) ("[T]he due process claim required a finding that the defendants 'unreasonably and recklessly used excessive force' against Gaisor"); *State* v. *Tyson*, 2011–Ohio–4981, 2011 WL 4488955, *6 (Ohio App., Sept. 29, 2011) ("[T]he State was required to prove that appellant recklessly used or threatened the immediate use of force against Mr. Carter"); *State* v. *Adams*, 2010–Ohio–1942, 2010 WL 1757931, *2 (Ohio App., May 3, 2010) ("[T]he State was required to prove that appellant 'recklessly used or threatened the immediate use of force' against Stoops"); *Cook* v. *State*, 2005–0475, p. 3 (La. App. 1 Cir., 2/10/06), 928 So. 2d 589, 591 ("The jury found that Arton did not intentionally or recklessly use excessive force against Cook"); *David* v. *State*, 123 P. 3d 1099, 1103 (Alaska App. 2005) ("[A] jury could not convict him of second-degree murder without also finding that he had used reckless or criminally negligent force against the victim").

also *id.,* at ___ (slip op., at 1). The *Voisine* Court found it entirely ordinary to employ the phrase "'use . . . of physical force' against a domestic relation"—in other words, use of physical force against another person—to describe reckless assaults. *Id.,* at ___ (slip op., at 12).

If the plurality today were correct that a use of force "against" another can only be intentional or knowing, then the Court in *Voisine* surely would not have adopted the *exact formulation* of recklessly using force "against a domestic relation." *Res ipsa loquitur.*

The plurality today simply shrugs off the language from *Voisine. Ante,* at 22–23, n. 9. But the plurality cannot rewrite ordinary meaning. And as *Voisine*'s choice of language demonstrates, the ordinary meaning of the phrase "use of physical force against the person of another," such as against a domestic relation, easily encompasses reckless offenses, including reckless assault and reckless homicide. (More on *Voisine* later.)

More generally, the plurality's linguistic efforts to seize on the word "against" to scale back ACCA do not make a lot of sense. Consider two points. First, a use of force must be against someone or something. And second, as *Voisine* stated and Borden acknowledges, you can *recklessly* use force. Put those two points together and the resulting conclusion is irrefutable: One can recklessly use force against the person of another (or against the property of another). As relevant here, the ordinary meaning of the phrase "use of physical force against the person of another" thus covers reckless offenses such as reckless assault and reckless homicide.

Lest there be any doubt, keep in mind that we are talking about reckless offenses such as reckless assault or reckless homicide where a defendant made a *deliberate* decision to endanger another by using force, *and as a result injured or killed someone.* Applying ordinary meaning and employing

a modicum of common sense, one would say that such a defendant used force against the victim. If an individual fires a gun recklessly at a house and injures someone inside, that individual has used force against the victim. If an individual recklessly throws bricks off an overpass and kills a driver passing underneath, that individual has used force against the victim. If an individual recklessly drives 80 miles per hour through a neighborhood and kills a child, that individual has used force against the child. It defies common sense and the English language to suggest otherwise.

To appreciate the ordinary meaning of the phrase "use of physical force against the person of another," look also at some of the cases cited by the plurality today. See *ante,* at 18. In *People* v. *Hall*, a highly experienced skier careened down a slope at dangerously high speeds, out of control, until he crashed into an unsuspecting skier. See 999 P. 2d 207 (Colo. 2000). The "force of the impact" when Hall collided with the victim was so great that it "fractured the thickest part of the victim's skull" and caused traumatic brain injuries, resulting in the victim's death. *Id.,* at 211.

The fleeing shoplifter in *Craver* v. *State* leapt over the second-floor railing in a mall during normal business hours, while people were milling about in the area below. See 2015 WL 3918057, \*1 (Tex. Crim. App., June 25, 2015). The shoplifter landed directly on top of an elderly woman, breaking her back. *Id.,* at \*2.

And in *Seaton* v. *State*, a police officer blew through a red light without braking or activating his lights or sirens, collided with another car at a speed of about 100 miles per hour, ricocheted into another person who was standing nearby, and killed that bystander. See 385 S. W. 3d 85, 88 (Tex. Crim. App., 2012).

All of those offenses entail the use of physical force *against another person*. True, the skier who crashed into an innocent bystander on the slopes did not intend or know

with practical certainty that he would hit that bystander with such force that it would crack his skull. The shoplifter who vaulted himself over a second-floor railing may not have intended or known with practical certainty that he would slam into an unsuspecting shopper below. And the officer who drove through the red light at 100 miles per hour may not have intended or known with practical certainty that he would lose control and kill another person.

But the defendants in those cases did not merely "pay insufficient attention to the potential application of force." *Ante,* at 11. Instead, each of those defendants acted recklessly and thus made "a deliberate decision to endanger another." *Voisine*, 579 U. S., at ___ (slip op., at 7). Each of them consciously disregarded the obvious dangers that their volitional conduct—high-speed skiing, jumping off a second-floor railing, or speeding at 100 miles per hour in a car without lights or sirens—posed to anyone unfortunate enough to cross their paths. See *id.*, at ___ (slip op., at 6). Each of those defendants knew that the people around them would have to be really lucky to get out of the way. And in ordinary parlance, each of those defendants used force against their victims when they made physical *contact* with those victims as a direct result of their reckless behavior— that is, of their deliberate decision to endanger another.

\* \* \*

To sum up, the plurality's reading of the statutory phrase "against the person of another" fails for two alternative and independent reasons. First, that phrase is a term of art that limits the category of offenses covered by ACCA's use-of-force clause to those involving force against the person rather than against property. It does not serve as a round-about way of heightening the *mens rea* requirement for violent felonies to intent or knowledge. Second, and in the alternative, even if the phrase "against the person of another" is not a term of art, the ordinary meaning of that

phrase encompasses reckless offenses such as reckless assault and reckless homicide.[16]

## II

All of that is more than enough to resolve this case. But in addition to all of that, the Court's recent precedent in *Voisine* v. *United States* convincingly demonstrates that ACCA covers reckless offenses such as reckless assault and reckless homicide.

As noted above, the Court in *Voisine* concluded that the phrase "use of physical force" in a similarly worded statutory provision encompasses reckless offenses, as well as intentional or knowing offenses. 579 U. S. 686 (2016). *Voisine* established two key points. First, *Voisine* confirmed that reckless offenses such as reckless assault and reckless homicide entail the use of physical force against another person—there, against a domestic relation or victim. Second, contrary to the plurality's analysis today, *Voisine* explained that the Court's prior decision in *Leocal* v. *Ashcroft*, 543 U. S. 1 (2004), meant simply that *negligent* offenses do not involve the use of physical force for purposes of statutes such as ACCA.

*First*, *Voisine* confirmed that reckless offenses involve the use of physical force against another person—in that case, against a "domestic relation" or "victim." In *Voisine*, the Court addressed a subsection of §922(g) that bars individuals from possessing firearms if they have been convicted of a misdemeanor crime of domestic violence. See 18 U. S. C. §922(g)(9). The statute defines "misdemeanor crime of domestic violence" as a misdemeanor that "has, as an element,

_____

[16] The plurality asserts that my two alternative and independent interpretations of the use-of-force clause are "mutually inconsistent." *Ante,* at 12. But the point of alternative arguments is to explain that there may be two different ways of looking at an issue (which may differ from one another in certain respects), but that both ways of looking at the issue lead to the same bottom line. So it is here.

the use or attempted use of physical force" and was committed against a "victim" who was in a domestic relationship with the defendant. §921(a)(33)(A); see also *Voisine*, 579 U. S., at ___ (slip op., at 1).[17]

The question in *Voisine* was whether that statutory definition "applies to reckless assaults, as it does to knowing or intentional ones." *Id.,* at ___ (slip op., at 4). The Court held that the statute applied to reckless assaults.

The Court in *Voisine* began by describing bedrock criminal law principles. Pointing to the Model Penal Code, the Court explained that a person acts recklessly with regard to the consequences of his actions if he "'consciously disregard[s]' a substantial risk that the conduct will cause harm to another." *Ibid.* (quoting Model Penal Code §2.02(2)(c)). The Court stated that even though such a person does not intend or know to a practical certainty that harm will result, he nonetheless makes "a deliberate decision to endanger another." *Voisine*, 579 U. S., at ___ (slip op., at 7). And the Court noted that recklessness as to the consequences of one's actions ordinarily suffices for criminal liability.

The Court then concluded that the phrase "use of physical force" in §921(a)(33)(A) does not require that a defendant *intend* or *know* that his conduct will cause harm. Instead, it is enough that he *recklessly* employs force—that is, acts in "conscious disregard" of a "substantial risk of causing harm." *Id.,* at ___ (slip op., at 6). For example, a man who

—————

[17] Section 921(a)(33)(A) provides in relevant part: "[T]he term 'misdemeanor crime of domestic violence' means an offense that—

"(i) is a misdemeanor under Federal, State, or Tribal law; and

"(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." (Footnote omitted.)

"throws a plate in anger against the wall near where his wife is standing" has used force against his wife even if the man "did not know for certain (or have as an object)" that "a shard from the plate would ricochet and injure his wife." *Ibid.* It suffices that the man "recognized a substantial risk" that his forceful act would harm his wife. *Ibid.* That example, the Court explained, illustrated that the statute was "indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct." *Ibid.*

In *Voisine*, to have committed a qualifying misdemeanor crime of domestic violence, the defendant must have used force against a "victim," to use the statute's term, often against the defendant's spouse or partner. As the *Voisine* Court stated, reckless assault in the domestic violence context entails "the 'use . . . of physical force' *against a domestic relation*" even though a defendant who acts recklessly does not intend or know to a practical certainty that his use of force will harm that domestic relation. *Id.*, at \_\_\_ (slip op., at 12) (emphasis added). In other words, the Court agreed that a reckless assault entails the use of physical force *against the person of another* (there, "against a domestic relation" or "victim").

*Voisine*'s conclusion applies equally to ACCA's violent felony definition. The two definitions share critical features. Both definitions apply in the context of §922(g)'s ban on possession of firearms by individuals convicted of certain offenses. Both definitions apply to offenses that have as an element the "use of physical force."

The only distinction between those two definitions is that ACCA employs the phrase "use of physical force against the person of another" while §921(a)(33)(A) employs the phrase "use of physical force" and then makes clear that force must be used against a "victim" who is a domestic relation. But that distinction makes no difference for *mens rea* purposes. The Court in *Voisine* took as a given that the object of the

reckless conduct would be another person—the "victim" as the statute describes it. See *id.,* at ___, ___, ___, ___, ___, ___ (slip op., at 1, 4, 7, 8, 9, 12). Indeed, given that *Voisine* involved a domestic violence statute, it would have been unnecessary or even redundant to add the words "against the person of another" to the statute. After all, a domestic violence offense, such as assault, is necessarily an offense against the person of another. Recognizing that reality, the *Voisine* Court explicitly stated that the "federal ban on firearms possession applies to any person with a prior misdemeanor conviction for the 'use . . . of physical force' *against a domestic relation*." *Id.,* at ___ (slip op., at 12) (quoting §921(a)(33)(A); emphasis added); see also *id.,* at ___ (slip op., at 1).

Contrary to what the plurality today seems to think, *Voisine* did not create some imaginary world where one could recklessly use force, but one could not recklessly use force against another person. On the contrary, *Voisine* explicitly recognized that one could recklessly use force "*against* a domestic relation"—that is, against another person.[18]

*Voisine* alone should have made this case very straightforward. In the wake of *Voisine*, most Courts of Appeals to consider the issue certainly thought it was. They responded to *Voisine* by applying its analysis to ACCA's violent felony definition.[19] As Chief Judge Sutton cogently explained in

———————

[18] To be sure, to avoid a Second Amendment problem, the defendant in *Voisine* also argued that the statute at issue there should not be interpreted to prohibit the possession of firearms by someone who had committed a single reckless *misdemeanor* offense. See 579 U. S., at ___, n. 6 (slip op., at 11, n. 6); see also *id.,* at ___ (THOMAS, J., dissenting) (slip op., at 16). But there is no such constitutional issue lurking in this case. This case involves a sentencing enhancement, not primary liability, and applies only when the defendant has been convicted of three prior ACCA violent felonies committed on different occasions and has then committed a fourth felony by unlawfully possessing firearms.

[19] See, *e.g., United States* v. *Burris*, 920 F. 3d 942, 951 (CA5 2019);

relying on *Voisine* to interpret the phrase "use of physical force against the person of another": "*Voisine*'s key insight is that the word 'use' refers to 'the act of employing something' and does not require a purposeful or knowing state of mind. That insight does not change if a statute says that the '*use* of physical force' must be 'against' a person, property, or for that matter anything else. . . . Sometimes the simplest explanation is the best explanation." *United States* v. *Verwiebe*, 874 F. 3d 258, 262–263 (CA6 2017) (citations omitted).

But today, the plurality tries to disappear *Voisine*'s use of the phrase "against a domestic relation" from the U. S. Reports. Seeking to erase that phrase from *Voisine* with a footnoted "*mea culpa*," the plurality today concludes that the additional phrase "against the person of another" in ACCA means that ACCA's use-of-force clause does not cover reckless crimes, even though the statute at issue in *Voisine* did. *Ante,* at 20–23, and n. 9. The plurality's attempt to rewrite *Voisine* does not persuade. As noted above, *Voisine* held that reckless offenses such as reckless assault and reckless homicide entail the "use of physical force," and the *Voisine* opinion further explained that those reckless offenses entail the use of physical force against the person of another—namely, "against a domestic relation" or "victim."

*Second*, as *Voisine* fully explained, the Court's prior decision in *Leocal* concluded only that *negligent* offenses do not involve the use of physical force for purposes of ACCA. *Leocal*, 543 U. S., at 9, 13; see also *Voisine*, 579 U. S., at \_\_\_ (slip op., at 7). *Leocal* addressed whether a driving-under-the-influence offense that required only a *negligent* mental state fell within §16(a)'s definition of "crime of violence." The *Leocal* Court held that it did not. The phrase "use . . .

---

*United States* v. *Haight*, 892 F. 3d 1271, 1280–1281 (CADC 2018); *United States* v. *Pam*, 867 F. 3d 1191, 1207–1208 (CA10 2017); *United States* v. *Fogg*, 836 F. 3d 951, 956 (CA8 2016).

of physical force against the person or property of another," the Court reasoned, is "most naturally" read to suggest "a higher degree of intent than negligent or merely accidental conduct." 543 U. S*.,* at 9 (internal quotation marks omitted). As the Court explained: "While one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident." *Ibid.*

The *Leocal* Court took care, however, to reserve the question we confront today—namely, whether offenses requiring "proof of the *reckless* use of force against the person or property of another" would qualify under a statutory definition like §16(a). *Id.,* at 13 (emphasis in original).

As *Voisine* later explained, the critical *mens rea* dividing line in statutes requiring the use of force is the line "between accidents and recklessness"—a distinction that "*Leocal* itself recognized." 579 U. S., at ___ (slip op., at 7). Accidents or negligence do not involve the *use of force* because such conduct is not volitional. *Ibid.* But reckless behavior, like throwing a plate against a wall or firing a gun at a house, is different and does involve the *use of force.* After all, the "harm such conduct causes is the result of a deliberate decision to endanger another—no more an 'accident' than if the 'substantial risk' were 'practically certain.'" *Ibid.*

As a matter of history, theory, and practice in criminal law, the line drawn by *Voisine* and *Leocal* between recklessness and negligence is much more salient than the line drawn by the plurality today between knowledge and recklessness. An individual who consciously disregards a substantial risk of a harmful result has a culpable state of mind and has made a deliberate decision to endanger another, even if it is not practically certain the harmful result will occur. And for that reason, to reiterate, the Model Penal Code and most States draw the ordinary line of criminal

culpability between recklessness and negligence, not between knowledge and recklessness.

Rather than acknowledge *Leocal*'s narrow holding on negligence as distinct from recklessness, knowledge, and intent, the plurality today focuses on *Leocal*'s observation that the "critical aspect" of §16(a)'s "crime of violence" definition is that it requires the "'use . . . of physical force *against the person or property of another*.'" 543 U. S*.,* at 9 (quoting §16(a); emphasis in original). By the plurality's account today, *Leocal*'s analysis of §16(a)'s "against" phrase—which was missing from the statute at issue in *Voisine*—confirms that ACCA's materially similar "against" phrase is the "critical text for deciding the level of *mens rea* needed." *Ante,* at 21–22 (internal quotation marks omitted).

But *Leocal* never focused on the term "against the person or property of another" in isolation. It focused on the full phrase "use of physical force against the person or property of another." 543 U. S., at 9. And *Leocal* said that negligence does not entail such a use of force.

Indeed, the Court in *Voisine* already made that same point about *Leocal*. *Voisine* recognized that the statute in *Leocal*, like the "similarly worded" statute in *Voisine*, "hing[ed] on the 'use' of force." 579 U. S., at \_\_\_, n. 4 (slip op., at 8, n. 4). The *Voisine* Court distinguished *Leocal* solely on the ground that an accident or negligence cannot be considered an "'active employment'" of force, whereas reckless assault does entail an active employment of force. 579 U. S., at \_\_\_ (slip op., at 7). As Chief Judge Sutton correctly pointed out, *Voisine* "tellingly placed no weight on the absence of 'against the person or property of another'" in distinguishing the statute at issue in *Voisine* from the statute at issue in *Leocal*. *Verwiebe*, 874 F. 3d, at 263. All of *Voisine*'s lengthy analysis of *Leocal* would have been entirely unnecessary if the *Voisine* Court actually thought that the phrase "against the person or property of another"

in the *Leocal* statute distinguished the statute in *Leocal* from the statute in *Voisine*.

Put simply, if the phrase "against the person . . . of another" from the statute in *Leocal* were actually the "Rosetta Stone" of *mens rea* as the plurality today seems to think, *Voisine* would have mentioned that point. *Verwiebe*, 874 F. 3d, at 263. But that distinction is nowhere to be found in *Voisine*. For *mens rea* purposes, *Voisine* treated a statute that covered the "use of physical force" the exact same as a statute that covered the "use of physical force against the person of another."

The plurality's double-barreled effort today to (i) erase *Voisine*'s use of the phrase "against a domestic relation" and also (ii) sweep away *Voisine*'s analysis of *Leocal* is something to behold. In my view, the plurality's opinion today cannot be squared with what the Court stated just five years ago in *Voisine*.

If this Court were to faithfully apply *Voisine*'s language and reasoning to this case, as almost all courts of appeals to consider the issue have done in the wake of *Voisine*, that would be the end of the matter. The plurality's decision to rewrite *Voisine* today is not convincing, especially when considered together with the other textual arguments in favor of the Government's position here.[20]

## III

To support its analysis, the plurality also relies on ACCA's "context and purpose." *Ante,* at 16. That argument is likewise unpersuasive, in my respectful view.

Start with context. The plurality focuses on the supposed ordinary meaning of the term "violent felony" in isolation. The plurality maintains that ACCA's definition of violent felony should be construed to "mark out a narrow category of violent, active crimes." *Ibid.* (internal quotation marks

---

[20] To reiterate, JUSTICE THOMAS declines to follow *Voisine* and, in doing so, provides the fifth vote for the Court's decision today.

omitted).

To begin with, when a statute explicitly defines a term, we generally follow that statutory definition. See *Digital Realty Trust, Inc.* v. *Somers*, 583 U. S. \_\_\_, \_\_\_ (2018) (slip op., at 9). In ACCA, Congress defined the term "violent felony" to include offenses that involve the "use of physical force against the person of another." And as explained above, that definition encompasses reckless offenses like reckless assault and reckless homicide.

Moreover, reckless assaults and reckless homicides *are* violent crimes, as a matter of ordinary meaning. Recklessly firing a weapon and injuring an unsuspecting victim is violent. Recklessly throwing bricks off an overpass and killing a driver passing underneath is violent. Recklessly driving 80 miles per hour through a neighborhood and killing a child is violent.

The plurality also refers to the phrase "armed career criminal" (the statutory title) in a way that seems to suggest that an ACCA defendant's predicate violent felonies must be committed with firearms. See *ante,* at 17, 23. That is incorrect. The three predicate felonies must be "violent" as defined in the statute but can be committed with or without firearms. Contrary to the plurality's intimations, the statute penalizes "career criminals" who then unlawfully arm themselves with firearms. The plurality's subtle reconfiguration of the statutory title for contextual support is off base.

The plurality's related reliance on ACCA's supposed purpose is similarly misplaced. The plurality speculates that Congress designed ACCA to cover those offenders "who, when armed, 'might deliberately point the gun and pull the trigger.'" *Ante,* at 17 (quoting *Begay* v. *United States*, 553 U. S. 137, 145–146 (2008)). But even assuming that was Congress's *only* goal in enacting ACCA (recall that ACCA also covers those whose predicate offenses were serious drug crimes), the statute expressly defines the offenders

who fit into that dangerous category—namely, those who have been convicted of three violent felonies and then unlawfully possess firearms. Congress's goal of preventing further violence by recidivist violent felons does not support drawing a distinction between reckless assault and knowing assault, or between reckless homicide and knowing homicide.

The plurality also says that Congress did not seek to ensnare low-level or ordinary criminals. True. But again, ACCA's 15-year mandatory minimum sentence is triggered only after a defendant is convicted of not one, not two, but *three* violent felonies committed on separate occasions—and then proceeds to commit a *fourth* felony by unlawfully possessing firearms. Such repeated violent conduct is not the stuff of low-level or ordinary criminals. Even assuming the plurality's premise that a driver who recklessly kills a pedestrian or a parent who recklessly inflicts abuse on her children is not dangerous the first time around—a doubtful premise that would be news to many victims—that assumption surely falls apart after the second and third reckless felony convictions. At that point, the individual has demonstrated a consistent willingness to deliberately engage in dangerous behavior that poses an obvious risk of physical harm to others. And someone who has been convicted of three reckless assaults or homicides committed on different occasions—and then unlawfully possesses firearms—is not a low-level or ordinary criminal, but is someone who Congress might have reasonably feared would commit further violence.

The plurality expresses particular concern over the notion that interpreting ACCA to cover reckless offenses would sweep in ordinary reckless driving offenses, like "running a stop sign or veering onto the sidewalk." *Ante,* at 18. But the plurality does not cite a single case where a reckless driving offense not involving injury to others has been counted as an ACCA predicate. That is not surprising

because routine reckless driving statutes often do not require injury to others and thus would not qualify as a "use of physical force" under ACCA. It is only when the reckless driver causes harm to another and is convicted of an offense akin to reckless assault or reckless homicide that the offense typically would come within ACCA.

Notably, in citing what it implies are benign reckless driving offenses, the plurality fails to mention that the driver who blew through a stop sign in *State* v. *Gillon* collided with another vehicle, killing one person and injuring two others. See 15 S. W. 3d 492, 496–497 (Tenn. Crim. App. 1997). And the driver who erratically veered onto a sidewalk in *State* v. *Graham* drove "straight toward" another vehicle and crashed into it, leaving the driver of the vehicle "lying face first outside of the passenger side of his vehicle" "screaming in pain." 2008 WL 199851, \*2 (Tenn. Crim. App., Jan. 24, 2008). The accident left the victim "unable to walk for three months" after the crash. *Ibid.* As with the other sanitized examples the plurality cites today, it strains credulity to suggest that the drivers in either of those cases did not use force *against their victims*—or that they could not fairly be considered "career criminals" if convicted of those kinds of violent felonies on *three* separate occasions.

In discussing context and purpose, the plurality also tries to further distinguish *Voisine* by saying that *Voisine* involved a prior offense of domestic violence, whereas this case involves prior offenses of assault. *Ante,* at 23. But Congress wanted to prohibit thrice-convicted violent criminals from unlawfully possessing firearms at least as much as it wanted to prohibit misdemeanor domestic violence offenders from unlawfully possessing firearms. *Voisine* cannot be distinguished on purposive grounds.

Finally, in discussing context and purpose, the plurality alludes several times to the 15-year mandatory minimum sentence in ACCA. (The mandatory minimum seems to loom very large as an influence on the plurality's overall

analysis here.) But that mandatory minimum sentence comes into play only after four separate felony convictions, three of them for violent felonies and a fourth for unlawfully possessing firearms. ACCA's mandatory minimum sentence is not a basis for interpreting the statute contrary to its best reading. Moreover, Congress is attuned to the issue and has taken many steps in recent years to recalibrate sentencing, address mandatory minimums, and target those who most deserve substantial sentences. It is not our role to rewrite Congress's sentencing laws just because we might disagree with Congress or think that Congress is not moving quickly enough to enact new sentencing laws.

In short, ACCA's context and purpose, properly read, strongly support what the statutory text and precedent already establish: An individual who commits three reckless assaults or homicides and then unlawfully possesses firearms falls well within the class of people that ACCA encompasses.

## IV

The Court's decision today will generate a variety of serious collateral effects that further underscore the implausibility of the plurality's statutory interpretation.

*First*, because the States define reckless assault and reckless homicide to cover a range of conduct, the Court's decision will exclude from ACCA many defendants who have committed serious violent offenses. Consider just a few examples, but keep in mind that there are thousands more:

- During the course of a fight, a defendant shot another man in the chest and killed him. A jury found the defendant guilty of second-degree reckless homicide. *State* v. *Jackson*, 2012 WL 4799459, *1 (Wis. App., Oct. 10, 2012).
- A defendant had been drinking in a parking lot with several others and then attacked another person with a knife. The knife attack resulted in a "ten-inch

long, 'gaping' laceration" that "went down to the
depth of the victim's ribs, through two layers of mus-
cle and through his interior abdominal wall."  The
defendant was convicted of reckless aggravated
assault.  *State* v. *Farrar*, 2002 WL 560959, \*1–\*2
(Tenn. Crim. App., Apr. 16, 2002).

• At a party, a defendant picked up a friend's gun,
pointed it directly at another person's head, and
pulled the trigger.  The evidence adduced at trial
established that the defendant had recklessly disre-
garded a known risk that the gun was loaded.  The
defendant was convicted of reckless homicide.  *State*
v. *Gough*, 2009–Ohio–322, 2009 WL 180298, \*1–\*2
(App., Jan. 26, 2009).

• A defendant savagely beat his victim "without prov-
ocation," causing the victim to suffer "hearing loss,
missing teeth, impaired vision and impaired
memory."  The defendant was convicted of reckless
aggravated assault.  *State* v. *McAmis*, 2010 WL
2244124, \*4 (Tenn. Crim. App., June 4, 2010).

In each of the above examples, the defendant's mental state
for the state-law offense was determined to be recklessness.
Under the Court's decision today, however, not one of those
defendants committed a "violent felony" for purposes of
ACCA because they supposedly did not commit an offense
that necessarily entailed the use of force *against the person
of another*.

And it gets worse.  Under the Court's decision, even
second-degree murder and some forms of manslaughter
may be excluded from ACCA.  That is because, in many
States, some forms of second-degree murder and man-
slaughter do not require intent or knowledge.  The idea that
those offenses would fall outside of ACCA's scope is, as one
judge aptly put it, "'glaringly absurd.'"  *United States* v. *Be-*

*gay*, 934 F. 3d 1033, 1047 (CA9 2019) (N. R. Smith, J., dissenting in part). Something has gone badly astray when this Court is suggesting that second-degree murder and manslaughter might not involve the "use of physical force against the person of another."[21]

*Second*, the Court's decision will exclude even some convictions for intentional and knowing assaults. That is because several States criminalize felony assault in a single, indivisible provision that can be satisfied by intent, knowledge, or recklessness.[22] Because courts use the categorical approach when applying ACCA's violent felony definition, the Court's decision today will thus exclude many intentional and knowing felony assaults from those States.

Consider just one example. In *United States* v. *Esparza-Herrera*, a defendant broke into the house of a woman he had previously dated, tied her up, and beat her over a four-hour period, leaving blood on her hands and face, her eyes

---

[21] As the plurality notes, today's decision should not be construed to express any view on the application of the use-of-force clause to crimes requiring a mental state of *extreme* recklessness. See *ante,* at 7, n. 4. In my view, crimes committed with extreme recklessness, such as depraved-heart murder, should obviously still qualify as predicate offenses under ACCA, even after today's decision. And indeed, counsel for Borden forthrightly acknowledged at oral argument that extreme recklessness crimes, such as depraved-heart murder, can still suffice under ACCA. See Tr. of Oral Arg. 14–15, 19. But the plurality, for some reason, refuses to even acknowledge that depraved-heart murder is a violent felony. The plurality's reticence is telling, and that reticence shows just how far the plurality's interpretation of this statute has strayed from the statutory text and basic common sense.

[22] See Me. Rev. Stat. Ann., Tit. 17–A, §208 (Cum. Supp. 2021) (aggravated assault); R. I. Gen. Laws §11–5–2 (Supp. 2020) (felony assault); Utah Code Ann. §76–5–103 (Supp. 2019) (aggravated assault); see also *United States* v. *Rose*, 896 F. 3d 104, 114 (CA1 2018) (although Rhode Island case law is inconclusive, "it appears possible" that ordinary recklessness suffices for felony assault under R. I. Gen. Law §11–5–2); *State* v. *Seach*, 2021 UT App 22, ¶18, 483 P. 3d 1265, 1271 (Utah Code Ann. §76–5–103 requires the State to prove that a defendant acted "intentionally, knowingly, or recklessly").

swollen shut, and bite marks all over her body. 557 F. 3d 1019, 1021, n. 2 (CA9 2009). The defendant was convicted under a state statute that proscribed "'intentionally, knowingly or recklessly'" causing "'temporary but substantial disfigurement.'" *Id.,* at 1021. Under the Court's decision today, that offense would not qualify as a violent felony under ACCA.

*Third,* after today's decision, attempted and threatened assaults and homicides will be covered under ACCA as violent felonies. But *actual* assaults and *actual* homicides that were committed recklessly will not be covered under ACCA. It seems incongruous to conclude that ACCA covers attempts or threats to injure others that never get completed or carried out, but does not cover situations where an individual carries through with reckless conduct and leaves a victim in a hospital or graveyard.

As those points indicate, the Court's decision today will undermine Congress's sentencing policy. In particular, today's decision will mean that some defendants otherwise subject to ACCA will leave prison much earlier than Congress dictated, or avoid ACCA altogether.[23] To some, that may seem costless or even beneficial. Indeed, the plurality, in places, seems to doubt the use of the 15-year mandatory minimum sentence—even for someone convicted of three separate violent felonies and then a fourth for unlawfully possessing firearms. But Congress, not this Court, sets national sentencing policy for violent crimes. Today's decision overrides Congress's policy judgment about the risk posed by serial violent felons who unlawfully possess firearms.

---

[23] That is to say nothing of the collateral review petitions that will likely inundate courts in the circuits that relied on *Voisine* to hold that ACCA covers reckless offenses. See n. 19, *supra.* To be clear, defendants who received an ACCA enhancement based on a reckless felony conviction may not necessarily prevail on collateral review. For example, many petitions may fall outside §2255's 1-year statute of limitations. But there can be little question that many such petitions will be filed.

And today's decision will have significant real-world conse-quences.  After all, as the U. S. Sentencing Commission re-cently reported, there is a very high rate of violent crime recidivism for ACCA defendants released from federal prison.  According to that Sentencing Commission report, 59% of ACCA defendants released between 2009 and 2011 were re-arrested within eight years of their release from federal prison, most commonly for assault and most com-monly within 18 months of release.  See Federal Armed Ca-reer Criminals: Prevalence, Patterns, and Pathways 43–45 (2021).  There is no reason to believe that the would-be ACCA defendants who will receive a lighter sentence after the Court's decision today will produce significantly differ-ent recidivism statistics.  Those alarming statistics cannot be ignored, and they portend some of the human costs of the Court's erroneous decision today.

\* \* \*

In sum, the text of ACCA's use-of-force clause encom-passes reckless offenses, such as reckless assault and reck-less homicide.  Contrary to the plurality's conclusion today, the phrase "against the person of another" reflects a centuries-old term of art for classifying crimes and has zero to do with *mens rea*.  Even setting aside that longstanding usage, the plurality's interpretation of the phrase "use of physical force against the person of another" fails as a matter of or-dinary meaning and precedent.  I respectfully dissent.